# MISSOURI RATE CASES.[1]

APPEALS AND CROSS APPEALS FROM THE CIRCUIT COURT OF
THE UNITED STATES FOR THE WESTERN DISTRICT OF
MISSOURI.

Nos. 9, 12, argued October 12, 13, 1910; Ordered for reargument April 10,
1911; Reargued April 1, 2, 3, 1912. Nos. 339, 340, 341, 342, 345, 346,
349, 350, 351, 352, 357, 358, 365, 366, 367, 368, argued April 1, 2, 3, 1912.
—Decided June 16, 1913.

These suits were brought to restrain the enforcement of the freight-
rate and passenger-fare acts of the State of Missouri, passed in 1907.
The question of interference with interstate commerce is the same

---

[1] Docket titles of these cases are as follows:

No. 9. Knott et al., Railroad and Warehouse Commissioners, v.
Chicago, Burlington & Quincy R. R. Co.

No. 12. Chicago, Burlington & Quincy R. R. Co. v. Knott &c.

No. 339. Knott &c. v. St. Louis & San Francisco Railroad Co.

No. 340. St. Louis & San Francisco Railroad Co. v. Knott.

No. 341. Knott v. Atchison, Topeka & Santa Fe Railway Co.

No. 342. Atchison, Topeka & Santa Fe Railway Co. v. Knott.

No. 345. Knott v. Chicago, Rock Island & Pacific Railway Co.

No. 346. Chicago, Rock Island & Pacific Railway Co. v. Knott.

No. 349. Knott v. Kansas City Southern Railway Co.

No. 350. Kansas City Southern Railway Co. v. Knott.

No. 351. Knott v. St. Louis & Hannibal Railway Co.

No. 352. St. Louis & Hannibal Railway Co. v. Knott.

No. 357. Knott v. Missouri, Kansas & Texas Railway Co.

No. 358. Missouri, Kansas & Texas Railway Co. v. Knott.

No. 365. Knott v. Kansas City, Clinton & Springfield Railway Co.

No. 366. Kansas City, Clinton & Springfield Railway Co. v. Knott.

No. 367. Knott v. Chicago Great Western Railway Co.

No. 368. Chicago Great Western Railway Co. v. Knott.

There were altogether thirty-six Missouri Rate Cases of which eight-
een were disposed of by this opinion. In eight of the last mentioned
suits, it was stipulated in the court below that they should abide by the
decision reached in other cases. Of the remaining ten, two were con-
solidated into one for purposes of trial, see p. 512, post, leaving nine

as that presented in the *Minnesota Rate Cases, ante,* p. 352, and the decision is the same.

Where an act fixing rates and imposing penalties for violation is repealed by a subsequent act which saves the penalties and simply substitutes other rates, the essential features of a controversy involving the constitutionality of the statute are the same; and, under the circumstances of this case, a supplemental bill may be filed setting up the new and additional legislation and praying relief in regard thereto.

Where the ends of justice are advanced and no substantial rights of

---

suits which were submitted to the court below upon the proofs. The court below enjoined the rates as being confiscatory.

On the appeals in these nine suits (there being an appeal and cross-appeal in each case) this court sustains the rates as to six companies, to wit: the Chicago, Burlington & Quincy, the Atchison, Topeka & Santa Fe, the Kansas City Southern, the Missouri, Kansas & Texas, the Chicago, Rock Island & Pacific (including the St. Louis, Kansas City & Colorado), and the St. Louis & San Francisco.

In the cases of these companies, the decrees are reversed and the cases remanded with instructions to dismiss the bills, respectively, without prejudice.

The court holds the rates to be confiscatory in three of the nine cases whose appeals were heard, to wit: the St. Louis & Hannibal, the Kansas City, Clinton & Springfield and the Chicago Great Western.

In these three cases, the decrees are affirmed, with the modification that the Railroad Commissioners and the Attorney-General of the State, may apply to the court whenever it shall appear that by reason of a change in circumstances the rates fixed by the State's acts are sufficient to yield reasonable compensation.

Under the stipulations made in the court below, the decision sustaining the rates as to the six companies above-mentioned will also apply to six other companies, to wit: the St. Louis Southwestern, the Missouri Pacific, the St. Louis, Iron Mountain & Southern, the Wabash, the Chicago, Milwaukee & St. Paul, and the Chicago & Alton, see p. 509, *post.*

The decision in the case of the Chicago Great Western Company, holding the rates to be confiscatory, will also apply by virtue of the stipulations made below to the Quincy, Omaha & Kansas City Railroad Company and the St. Joseph & Grand Island Railway Company. For other cases involving Missouri rates, see pp. 509, 512, *post.*

the objectors are violated, this court will not interfere with the reasonable discretion of the trial judge in a matter of practice.

Where the Federal court already has jurisdiction of an action to determine the constitutionality of a state statute fixing rates, that jurisdiction is not ousted by a substitution of rates by the legislature, because the State files a bill to enforce the new rates; the Federal court retains jurisdiction under a supplemental bill.

*Minnesota Rate Cases, ante,* p. 352, followed to effect that the legislative acts of Missouri establishing maximum rates for transportation wholly intrastate are not unconstitutional as an unwarranted interference with interstate commerce.

Legislative acts of a State establishing maximum freight and passenger rates for wholly intrastate commerce will not be declared unconstitutional under the Fourteenth Amendment as confiscatory in the absence of clear and convincing proof as to the value of the property used by the carrier and on which returns are based. General evidence as to assessed valuations without showing the method of appraisement are insufficient, either as to value of property or apportionment of expenses between interstate and intrastate business.

*Minnesota Rate Cases, ante,* p. 352, followed, disapproving the establishment of values of property used in interstate and intrastate business by apportionment based on the gross revenue received from each class of business.

Where a number of different carriers bring separate suits to enjoin the enforcement of railway rates established by a state statute on the ground that the rates are unconstitutional as confiscatory, the bills can be sustained as to those carriers which actually prove that the rates are confiscatory as not yielding a return on their property, although dismissed as to other carriers which fail to offer clear and convincing proof to that effect.

Where a statute is valid on its face, each person attacking it as depriving him of his property without due process of law must show it does so deprive him; he cannot rely on the fact that it deprives others of their property without due process of law.

168 Fed. Rep. 317, affirmed in certain cases and reversed in others.

APPEALS and cross-appeals from decrees of the Circuit Court entered March 8, 1909, as amended April 17, 1909, adjudging the maximum freight rate acts passed by the legislature of the State of Missouri, April 15, 1905, Laws, p. 102, and March 19, 1907, Laws, p. 171, and the maxi-

mum passenger fare act passed February 27, 1907, Laws, p. 170, to be confiscatory, and enjoining their enforcement. 168 Fed. Rep. 317.

Eighteen suits, brought by as many railroad companies, were begun in June, 1905, assailing the act of April 15, 1905 (effective June 16, 1905), which prescribed maximum rates for intrastate transportation of certain commodities in carload lots. The members of the Board of Railroad Commissioners, the Attorney-General of the State, and representative shippers, were made defendants.

Preliminary injunction was granted in each case, demurrers to the bills were overruled, answers were filed and in March, 1906, the cases were referred to a master to take evidence and report. The Master proceeded, by agreement, to take testimony in three of the cases.

While this reference was pending, the legislature in 1907, passed the following acts:

(1) That of February 27, 1907, fixing a maximum passenger fare within the State of two cents a mile, for railroads over forty-five miles in length.

(2) That of March 19, 1907, repealing the act of April 15, 1905, and prescribing new maximum intrastate rates for specified commodities in carload lots, the rates being higher in certain instances than those of the former act. It also repealed an act passed April 15, 1905 (not mentioned in the original bills) relating to rates on stone, sand and brick, and made new rates therefor. It was provided that the repeal should not relieve any railroad company from liabilities and penalties previously incurred.

(3) That of March 19, 1907 (Laws 1907, p. 187), fixing maximum rates for fruit in carload lots.

(4) That of April 4, 1907 (Laws 1907, p. 176), requiring carriers of live stock in carload lots to carry the shipper or his agent free of charge. (This statute was held unconstitutional by the state court and needs no further notice, *McCully* v. *Railroad Co.*, 212 Missouri, 1.)

These acts took effect on June 14, 1907.

On June 11, 1907, the complainant in each of the eighteen cases moved for leave to file an amended and supplemental bill, then presented to the court, which set forth the legislation of 1907, above-mentioned, and asked relief against its enforcement upon the grounds that these acts constituted an unwarrantable interference with interstate commerce and that they were confiscatory. On June 13, 1907, the court made an order setting down the applications for argument and meanwhile restraining the enforcement of the new rates. On June 17, 1907, upon hearing, leave to file was granted and a temporary injunction was allowed as to the freight rate laws of 1907, but not as to the passenger fare law. The latter was permitted to go into effect for three months without prejudice and was thereafter continued in force until the final decrees.

Meanwhile on June 14, 1907, bills were filed in the name of the State in the state court against the railway companies seeking an injunction requiring them to put in force both the freight and passenger rates as prescribed.

The supplemental bills in the Federal courts were amended so as to show these proceedings. On demurrer to these bills, as amended, it was insisted that they were without equity; that the matters alleged were not germane to or supplementary of the original bills; and that the state court had jurisdiction of the proceedings therein instituted. The demurrers were overruled and the defendants answered.

It was ordered (June 13, 1908) that the eighteen cases should be set down for hearing before the court upon the testimony theretofore taken before the Master, and upon such further oral and documentary evidence as should then be offered in open court. And the cases were so heard.

With respect to eight of the suits, it was stipulated that they should abide the result in other suits named.

The case of the St. Louis, Kansas City &. Colorado Railroad Company was consolidated with that of the Chicago, Rock Island & Pacific. Railway Company, the latter having acquired the property of the former, and the court ordered that the "findings, statements and figures" of the two companies should be combined. In the suit brought by the Chicago, Burlington & Quincy Railway Company, then the lessee of the property, the Chicago, Burlington & Quincy Railroad Company was substituted as complainant on the cancellation of the lease.

In the nine cases thus remaining, the court held that the rate acts, both of 1905 and 1907, were invalid, as confiscatory. The contention as to the invalidity of the acts by reason of interference with interstate commerce was not sustained. The costs were equally divided.

And from the final decrees entered in these nine suits, the above-entitled appeals and cross-appeals were taken.

*Mr. Elliott W. Major,* Attorney General of Missouri, *Mr. Sanford B. Ladd* and *Mr. F. W. Lehmann,* with whom *Mr. John M. Atkinson,* Assistant Attorney General of Missouri, was on the brief, for the Railroad and Warehouse Commissioners of the State of Missouri, appellants in the appeals and appellees in the cross-appeals:

The two-cent passenger fare act and maximum freight rate acts involved do not interfere with nor constitute a direct and substantial burden upon interstate commerce.

Ours is a dual form of government. *Howard* v. *Ill. Cent. R. R. Co.,* 207 U. S. 463; *Sands* v. *Manistee River Imp. Co.,* 123 U. S. 295; *B. .& O. R. R. Co.* v. *Maryland,* 21 Wall. 485; *In re Debbs,* 158 U. S. 564; *Cardwell* v. *Bridge Co.,* 113 U. S. 210.

Each State has the sole and exclusive authority to prescribe reasonable maximum passenger and freight rates on traffic wholly within the State.

It is a legal impossibility for state rates on intrastate traf-

fic to change interstate rates. If, however, it were legally possible for state rates to change or interfere with interstate rates, it is no objection to the validity of such laws that such rates incidentally affect interstate commerce. Cases *supra* and *Covington Bridge Co.* v. *Kentucky*, 154 U. S. 204; *Stone* v. *Farmers' L. & T. Co.*, 116 U. S. 325; *Nor. Pac. Ry. Co.* v. *North Dakota*, 216 U. S. 579; *New York* v. *Hesterberg*, 211 U. S. 41; *N. Y., L. E. & W. R. R. Co.* v. *Pennsylvania*, 158 U. S. 439; *C., B. & Q. R. R. Co.* v. *Cutts*, 94 U. S. 155; *Peik* v. *Chic. & N. W. Ry. Co.*, 94 U. S. 164; *Reagan* v. *Mercantile Trust Co.*, 154 U. S. 413; *Houston & Tex. Cent. Ry. Co.* v. *Mayes*, 201 U. S. 328; *Howard* v. *Ill. Cent. R. R. Co.*, 207 U. S. 502; *Ames* v. *Union Pac. Ry. Co.*, 64 Fed. Rep. 171.

The two classes of rates and traffic, interstate and intrastate, are separate, distinct and independent, and the raising or lowering of one cannot affect the other.

The lowering of one works no legal compulsion on the roads to change the other, and the roads cannot plead their own convenience or business reasons or the effect of competition between themselves in restraint of the otherwise undeniable power of the State. *Ames* v. *Union Pac. Ry. Co.*, 64 Fed. Rep. 171; *Oregon Navigation Co.* v. *Campbell*, 173 Fed. Rep. 978, 988; *Woodside* v. *Tonopah & G. R. Co.*, 174 Fed. Rep. 360; *Louisville & N. R. Co.* v. *Siler*, 186 Fed. Rep. 198; *Arkansas Rate Cases*, 187 Fed. Rep. 296; *Saunders* v. *Southern Express Co.*, 18 I. C. C. Rep. 415, 421; *Hope Cotton Oil Co.* v. *Tex. & Pac. Ry.*, 12 I. C. C. Rep. 265, 269; *Gibbons* v. *Ogden*, 9 Wheat. 194; *Employers' Liability Cases*, 207 U. S. 463; *Wabash Ry. Co.* v. *Illinois*, 118 U. S. 557, 565; *Chicago Ry. Co.* v. *Minnesota*, 134 U. S. 418, 459; *Northern Securities Co.* v. *United States*, 193 U. S. 197, 350; *Mo. Pac. Ry. Co.* v. *Kansas*, 216 U. S. 262, 283. See also *Louis. & Nash. Co.* v. *Eubank*, 184 U. S. 42; *Atlantic Coast Line Co.* v. *Nor. Car. Corp. Comm.*, 206 U. S. 1; *Mo. Pac. Ry. Co.* v. *Taylor*, 216 U. S. 283;

*Oregon Navigation Co.* v. *Campbell,* 183 Fed. Rep. 979; *Wabash, St. L. & Pac. Ry. Co.* v. *Illinois,* 118 U. S. 557; *Smyth* v. *Ames,* 169 U. S. 466; *St. Louis S. W. Ry. Co.* v. *Allen,* 187 Fed. Rep. 295; *Southern Pac. Co.* v. *Campbell,* 189 Fed. Rep. 182.

The opinion in *Shepard* v. *Northern Pac. Ry. Co.,* 184 Fed. Rep. 765, is without precedent, is a radical departure, a legal impossibility, and is founded upon neither law, logic nor reason. The opinion itself is its own undoing.

Intrastate and interstate commerce constitute two separate, distinct and independent classes, and the rates of each are fixed and controlled by separate sovereignties. The change in the rates of one by the state and in the other by Federal authority only operates upon and affects its own separate, distinct and independent class of commerce.

The enforcement of the passenger and freight rate acts in question would not, in fact, have the effect of directly and substantially burdening interstate commerce. *Chic. & G. T. R. R. Co.* v. *Wellman,* 143 U. S. 339, 343.

The law presumes the Missouri acts are valid and that includes the presumption they do not violate the commerce clause of the Constitution. *San Diego Land Co.* v. *National City,* 174 U. S. 739, 754; *Knoxville* v. *Water Co.,* 212 U. S. 1, 8, 16; *Chic., Mil. & St. P. Ry. Co.* v. *Tompkins,* 176 U. S. 167, 173; *Cotting* v. *Kansas City Stock Yards,* 183 U. S. 79, 91, 97; *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S. 362, 395; *Bridge Co.* v. *Henderson City,* 173 U. S. 592, 614; *St. L. & San Francisco Ry. Co.* v. *Gill,* 156 U. S. 649, 666; *Day* v. *Chic. & N. W. R. R. Co.,* 35 Fed. Rep. 866, 874; *Louis. & Nash. R. R. Co.* v. *Kentucky,* 183 U. S. 503, 511.

The freight and passenger rates involved are not violative of the Fourteenth Amendment and are not, therefore, confiscatory.

The legislature of Missouri was authorized to prescribe

reasonable maximum rates on intrastate traffic. *Stone* v. *Farmers' L. & T. Co.,* 116 U. S. 307; *Chic. & Grand Trunk R. R. Co.* v. *Wellman,* 143 U. S. 739; *Lehigh Valley R. R. Co.* v. *Pennsylvania,* 145 U. S. 192.

The freight and passenger laws involved are presumptively valid. *Chic., Mil. & St. P. Ry. Co.* v. *Tompkins,* 176 U. S. 167, 173; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79, 91, 97; *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S. 362, 395.

The burden of proving that the state laws are confiscatory rests upon the railroad company which must establish that the rates are confiscatory, clearly, unmistakably and beyond all doubt. *San Diego Land Co.* v. *National City,* 174 U. S. 739; *Willcox* v. *Cons. Gas Co.,* 212 U. S. 19; *Louis. & Nash. Ry. Co.* v. *Kentucky,* 183 U. S. 503, 511; *Nor. Pac. Ry. Co.* v. *North Dakota,* 216 U. S. 579.

All doubts must be resolved in favor of the validity of the freight act and passenger fare law involved and if the court is in doubt one way or the other as to the laws giving a fair return upon the reasonable valuation of the properties employed, that doubt sustains the laws. *Bridge Co.* v. *Henderson City,* 173 U. S. 614; *Day* v. *Chic. N. W. R. R. Co.,* 35 Fed. Rep. 866, 874; *Nor. Pac. Ry. Co.* v. *North Dakota,* 216 U. S. 579.

The case is heard and the questions determined *de novo* by this court and without regard as to how the questions were found and determined by the trial court. *Knoxville* v. *Water Co.,* 212 U. S. 1.

The rates, both freight and passenger, and business of the road in the State, may be considered in their entirety. *San Diego Land Co.* v. *National City,* 174 U. S. 739.

The road may be compelled to carry an article or articles at cost or even at a loss if the return on its entire business in the State affords it a reasonable compensation. *Nor. Pac. Ry. Co.* v. *North Dakota,* 216 U. S. 579.

The road must affirmatively advise the court what it

has done with the receipts and earnings of the company on its entire business in the State, and must not only give the amount showing the disposition of its revenues, but must give the items thereof; its expenses in general statements and in large sums will not be accepted so that the court may not be misled into doing grievous wrong to the public. *Chic. & Grand Trunk R. R. Co. v. Wellman,* 143 U. S. 739.

The service rendered by the road is an element which must be considered in determining the questions, because the road can only demand what the services rendered by it are reasonably worth. *Minn. & St. L. R. R. Co. v. Minnesota,* 186 U. S. 257; *Smyth v. Ames,* 169 U. S. 466.

Each case must be heard and determined upon its own particular facts and evidence. Reduction in rates does not necessarily mean reduction in revenue. They may have increased business volume and therefore increased earnings. *Smyth v. Ames; Chic. Grand Trunk R. R. Co. v. Wellman, supra; St. L. & San Francisco R. R. Co. v. Gill,* 156 U. S. 649.

In three cases only, *Reagan v. Farmers' L. & T. Co.,* 154 U. S. 362; *Covington Turnpike Co. v. Sanford,* 164 U. S. 578; *Smyth v. Ames,* 169 U. S. 466, has this honorable court held rates fixed by legislative bodies for public service corporations confiscatory. In each of the three cases the facts were either admitted or not seriously controverted, and can be distinguished from this case.

This court, on the other hand, has refused in thirteen or more cases to hold such rates invalid on account of being unreasonable and confiscatory. *San Diego Land Co. v. National City,* 174 U. S. 739; *Chic. & G. T. R. R. Co. v. Wellman,* 143 U. S. 739; *Stanislaus Co. v. San Joaquin River Co.,* 192 U. S. 201; *Dow v. Beidelman,* 125 U. S. 680; *St. L. & S. F. R. R. Co. v. Gill,* 156 U. S. 649; *San Diego Land Co. v. Jasper,* 189 U. S. 439; *Minn. & St. L. R. Co. v. Minnesota,* 186 U. S. 257; *Atlantic Coast Line*

v. *Florida,* 203 U. S. 256; *Sea Board Air Line* v. *Florida,* 203 U. S. 270; *Alabama & V. R. Co.* v. *Mississippi,* 203 U. S. 496; *Knoxville* v. *Water Co.,* 212 U. S. 1; *Willcox* v. *Cons. Gas Co.,* 212 U. S. 19; *Nor. Pac. Ry. Co.* v. *North Dakota,* 216 U. S. 579.

There are numerous factors necessary to know in order to determine whether or not the rates, both freight and passenger, are confiscatory or afford a reasonable return, including: the reasonable value of the properties employed in the business; the reasonable value of the properties less the franchise; the amount of the value assignable to state freight traffic; the amount of the value assignable to state passenger traffic; gross amount of revenue received; the gross amount of revenue received from state freight traffic; the gross amount of revenue received from state passenger traffic; total amount of expense; amount of expense assignable to state freight traffic; amount of expense assignable to state passenger traffic; taxes assignable to freight traffic; taxes assignable to passenger traffic; amount of diminution in revenue if freight acts had been in effect.

Each and every one of these factors must be established by affirmative proof on the part of the road.

Appellants' briefs show the total value of the properties of the various railroad companies in Missouri, together with the separate amounts of that part of the valuation assignable to state freight and state passenger traffic and upon which separate values they are entitled to a reasonable return. The railroad companies, however, are not entitled to any return upon that part of the valuation represented by their franchise.

Appellants challenge the correctness of the findings of the trial court, the method of dividing the operating expense between state and interstate traffic, the amount of operating expense charged to Missouri, the character of evidence received, the absence of primary or best evidence,

although within the keeping of the railroad, and like questions as applied, first, to freight rates, and, second, to passenger rates.

The court should not have divided the total freight expense between state and interstate traffic upon the basis of gross revenue; and certainly should not have added 50 per cent. to the expense of handling state freight in addition thereto. *Ames* v. *Union Pac. R. R. Co.*, 64 Fed. Rep. 182; *Chic., Mil. & St. P. R. R. Co.* v. *Tompkins*, 176 U. S. 176; *Atlantic Coast Line* v. *Ellis*, 203 U. S. 256, 260.

Total expenses should not have been divided between state and interstate traffic upon the basis of gross earnings. As to freight traffic it should have been divided on the ton-mile basis and as to passenger traffic on the passenger miles and service rendered.

It costs more to handle interstate freight less than carload lots than it does state freight less than carload lots.

The railroad officers and employés who testified in this case were forced to admit the correctness of the ton-mile theory.

The courts condemn the gross revenue theory and properly proceed upon the basis of the ton-mile theory.

*Mr. Frank Hagerman*, with whom *Mr. O. M. Spencer* was on the brief, for the Railroad Companies, appellees and cross-appellants:

The court below found the rates to be confiscatory. This finding was made from 5027 printed pages of evidence specifically applicable to all roads traversing the same territory. In the light of the peculiar circumstances surrounding the case, great weight should be given to the finding. It surely was as effective as like action by a master would have been. Especially is this true in view of the extended inquiry of the experts, their long oral cross-examinations and the reasons given for their methods of

dividing expenses and their determination that it costs
more to do the state than the interstate business. This
court cannot possibly be in as good a situation to pass
upon the facts found as was the court below.

The State had every opportunity to ascertain the facts.
Besides this, the law presumed it ascertained all the facts
before it attempted to fix the rates by legislative enact-
ment. If it failed so to do, the legislative acts should not
be permitted to stand.

The State refused to request any finding of fact or point
out any error or inaccuracy therein.

The evidence discloses that the rates in question are
confiscatory. Every presumption is in favor of the find-
ing below (*Shepard* v. *Nor. Pac. R. Co.*, 184 Fed. Rep.
765, 807, 808), which must be sustained unless the record
shows there has been some clear misconception of the
evidence or misapplication of the law. This is applicable
to masters' reports, *Tilghman* v. *Proctor*, 125 U. S. 126,
149; *Callaghan* v. *Nyers*, 128 U. S. 617; *Furrer* v. *Ferris*,
145 U. S. 132; *Fisher* v. *Shropshire*, 147 U. S. 133, 146,
especially where the reference was by consent. *Warren*
v. *Burt*, 58 Fed. Rep. 101, 106.

Here, by agreement, the court heard the case upon
oral evidence and dispensed with a master. The finding
ought, therefore, to be as effective as if it had been made
by a master, and should be given great weight, especially
in view of the facts recited.

The rates in question on any and all classes of business
are absolutely confiscatory unless, to obtain as between
state and interstate business, the original or equal cost
of each, there be a division of freight expenses upon the
ton-mile basis. When this is done, the freight rates are
confiscatory unless a very large percentage be added as
the extra cost.

The rates are confiscatory. This conclusion was reached
by the court below; and the method of ascertaining their

insufficiency was upon the same principle as that adopted in *A., T. & S. F. R. R. Co.* v. *Love,* 167 Fed. Rep. 493; *S. C.,* 185 Fed. Rep. 321; certiorari denied, 218 U. S. 675; 220 U. S. 618; *Re Arkansas Rates,* 163 Fed. Rep. 141; *S. C.,* 187 Fed. Rep. 290; *Ames* v. *Union Pac. R. Co.,* 64 Fed. Rep. 165; *Smyth* v. *Ames,* 169 U. S. 469; *C., M. & St. P. R. Co.* v. *Tompkins,* 176 U. S. 167; *Nor. Pac. R. Co.* v. *Keyes,* 91 Fed. Rep. 47; *Shepard* v. *Nor. Pac. R. Co.,* 184 Fed. Rep. 765; *Penna. R. Co.* v. *Philadelphia County,* 220 Pa. St. 100; *Central Ry. Co.* v. *Northampton County,* 11 Northampton Co. Ct. Rep. 342.

As a start upon the question of valuation, there must be ascertained the value of the whole property in the State devoted to all its uses. Presumptively, the bonds and stocks properly apportioned, represent that value. *Ames* v. *Union Pac. R. Co.,* 64 Fed. Rep. 165, 177; *So. Pac. R. Co.* v. *Bartine,* 170 Fed. Rep. 725, 751. However, included therein as elements of value, are the income, good-will, franchises, cost of construction, action of the State equalizing board, and other considerations, such as the company being a going concern.

For the rule under which this valuation is to be determined, see *Ames* v. *Union Pac. R. Co.,* 64 Fed. Rep. 165, 177; *Smyth* v. *Ames,* 169 U. S. 466, 547; *Willcox* v. *Cons. Gas Co.,* 212 U. S. 19; *Spring Valley Water Works* v. *San Francisco,* 124 Fed. Rep. 574, 592; *M., K. & T. R. Co.* v. *Love,* 177 Fed. Rep. 493; *Love* v. *A., T. & S. F. R. Co.,* 185 Fed. Rep. 321; *Shepard* v. *Nor. Pac. R. Co.,* 184 Fed. Rep. 765, 808; *Re Arkansas Rates,* 187 Fed. Rep. 290; *So. Pac. R. Co.* v. *Bartine,* 170 Fed. Rep. 725, 751. See also *People* v. *State Board,* 196 N. Y. 39, holding that this valuation was to be fixed as of the time when the inquiry was made.

The franchise value is to be considered. *Willcox* v. *Cons. Gas Co.,* 212 U. S. 19, 44; *Spring Valley Water Works* v. *San Francisco,* 124 Fed. Rep. 574, 592; *Monongahela Nav. Co.* v. *United States,* 158 U. S. 312, 328. In

tax assessments the franchise is always an element of value to be taxed. *State Railroad Tax Cases*, 92 U. S. 602, 605; *Columbus Southern Ry.* v. *Wright*, 151 U. S. 470, 479; *Adams Express Co.* v. *State Auditor*, 165 U. S. 194, 221; *Pittsburg &c. Ry. Co.* v. *Backus*, 154 U. S. 421, 429; *Franklin County* v. *Nashville & Chatt. Ry.*, 12 Lea, 521, 539; *Metropolitan Trust Co.* v. *Houston & Texas Cent. R. R.*, 90 Fed. Rep. 683; *Re Advance in Freight Rates*, 9 I. C. C. Rep. 382.

In any event, interest actually paid should always be returned. Bonded debt upon which for years interest has been paid, as in these cases, is substantial evidence of value. Interest upon bonds of a going concern is at least a criterion of a higher value than the amount of the bonded debt. *C., M. & St. P. R. R.* v. *Tompkins*, 90 Fed. Rep. 363, reversed, 176 U. S. 167; *C., M. & St. P. R. R. Co.* v. *Smith*, 110 Fed. Rep. 473, 475.

Unless the property is clearly shown to have been over-bonded, then interest is a fixed charge which ought in any event to be paid. That there was no over-bonding is the express finding below. Where money has been borrowed and mortgage bonds issued therefor, upon which for years interest has been paid, no court has ever yet denied that such charge was at least to be paid. Beale & Wyman on Railroad Rate Regulation, §§ 388, 393, 437; *Gas Light Co.* v. *New Memphis*, 72 Fed. Rep. 952; *C. & N. W. R. R. Co.* v. *Dey*, 35 Fed. Rep. 866, 879.

The only way in which to ascertain what part of this value is properly assignable to the classes of traffic in question is by taking such proportion of the entire value as the earnings from that class of business which is in question bears to the entire revenue in the State from all sources. *Re Arkansas Rates*, 163 Fed. Rep. 141; *S. C.*, 187 Fed. Rep. 290, 317; *M., K. & T. R. Co.* v. *Love*, 177 Fed. Rep. 493, 497; *S. C.*, 185 Fed. Rep. 321, 328; certiorari refused, 218 U. S. 675; 220 U. S. 618; *Shepard* v.

*Nor. Pac. R. Co.*, 184 Fed. Rep. 765, 810. This method of division was also adopted in *Ames v. Union Pac.*, 64 Fed. Rep. 165, 179; *Smyth v. Ames*, 169 U. S. 466; *C., M. & St. P. R. Co. v. Tompkins*, 90 Fed. Rep. 363; *State v. Atlantic Coast Line*, 40 Florida, 146; Beale & Wyman, § 466; *Southern Pac. R. Co. v. Bartine*, 170 Fed. Rep. 725, 751.

The question of rate of interest to which the companies are entitled was considered below. *St. L. & S. F. R. Co. v. Hadley*, 168 Fed. Rep. 317, and six per cent was adopted as the least rate to be allowed. This was the rate held proper in *Willcox v. Cons. Gas Co.*, 212 U. S. 19; in the Pennsylvania two cent fare cases, *Penna. R. Co. v. Philadelphia Co.*, 220 Pa. St. 100; *Central R. Co. v. Northampton Co.*, 11 Northampton Co. Ct. Rep. 342; and in *People v. State Board*, 196 N. Y. 39. See also *M., K. & T. R. Co. v. Love*, 177 Fed. Rep. 493; *S. C.*, 185 Fed. Rep. 321, and certiorari 218 U. S. 675; 220 U. S. 618. In *Shepard v. Nor. Pac. R. Co.*, 184 Fed. Rep. 765, 815, seven per cent. was sustained. *Re Arkansas Rates*, 187 Fed. Rep. 290, 345, 7.5 per cent. was sustained. See also *People v. Tax Commissioners*, 196 N. Y. 39; *S. C.*, 128 App. Div. 13.

The proper method of the first or equal division of expenses, as between state and interstate business, is upon the revenue basis. It was adopted in *Ames v. Union Pac.*, 64 Fed. Rep. 165; *C., M. & St. P. R. Co. v. Tompkins*, 176 U. S. 167; *Smyth v. Ames*, 169 U. S. 466; *C., M. & St. P. R. Co. v. Keyes*, 91 Fed. Rep. 47, 55; *Re Arkansas Rates*, 163 Fed. Rep. 141; *M., K. & T. R. Co. v. Love*, 177 Fed. Rep. 493, 498, 499; *S. C.*, 185 Fed. Rep. 321, 330, 331; 218 U. S. 675; 220 U. S. 618; *Shepard v. Nor. Pac. R. Co.*, 184 Fed. Rep. 765, 810, 812; *Re Arkansas Rates*, 187 Fed. Rep. 290, 320, 344. See also *Cedar Hill Coal Co. v. C. & S. Ry. Co.*, 16 I. C. C. 387, 393; *Gustin v. A., T. & S. F. R. Co.*, 8 I. C. C. 277.

The auditors of the eighteen railroads adopted the

revenue basis, it being the method used by all railroads where it has been necessary to divide expenses as between state and interstate. The best railway experts in the world favored it, giving many reasons for their views.

There is a substantial extra cost of doing state business over interstate, which should be deducted from the earnings.

If the division were made differently, the result would be the same. The Nebraska, North Dakota, South Dakota and Oklahoma divisions were by the same method. The Minnesota and Arkansas divisions of expenses upon final hearing prove that the theory adopted below brought a fair result.

The laws under which the rates were to be imposed are invalid: they directly affect interstate commerce and, therefore, violate the Federal Constitution, which vests in Congress exclusively the regulation of interstate commerce. *Ex parte Young*, 209 U. S. 123; *M., K. & T. R. Co.* v. *Love*, 177 Fed. Rep. 493, 498; *Shepard* v. *Nor. Pac. R. Co.*, 184 Fed. Rep. 765.

The making of state rates in Missouri necessarily and directly affects interstate rates for that competition forces the interstate rates to the same figures. The state rate necessarily fixes the interstate.

When there are two lines between the same points, like the C., B. & Q., and Mo. Pac., between St. Louis and St. Joseph the interstate rate must be fixed at the same as the state or else the interstate carrier will do no business between the same points.

Where points are practically the same (for instance, as Kansas City, Missouri, and Kansas City, Kansas) with nothing but a street or invisible state line intervening, the interstate rate must necessarily meet the state; otherwise there would be discrimination between localities.

Any law, no matter what its form, which substantially and directly affects or interferes with interstate commerce,

is void. The court will disregard forms or names, and look through both for the substance of things. *Galveston & H. T. R. Co.* v. *Texas,* 210 U. S. 217, 227; *Western Union Tel. Co.* v. *Coleman,* 216 U. S. 1, 27; *Pullman Co.* v. *Kansas,* 216 U. S. 56, 62; *International Text Book Co.* v. *Pigg,* 217 U. S. 91; *L. & N. R. Co.* v. *Eubanks,* 184 U. S. 27, 47.

The rule has been applied to the piping of natural gas, *West* v. *Kansas Natural Gas Co.,* 221 U. S. 229; the issuance of free transportation, *L. & N. R. Co.* v. *Mottley,* 219 U. S. 467; *C. I. & L. R. Co.* v. *United States,* 219 U. S. 486; the stoppage of all trains at junctions, *Herndon* v. *C., R. I. & P. R. Co.,* 218 U. S. 159; state car distribution, *St. L. & S. W. R. Co.* v. *Arkansas,* 217 U. S. 136. See also *Nor. Pac. Ry. Co.* v. *Washington,* 222 U. S. 370; *Southern Ry. Co.* v. *Reid,* 222 U. S. 424; *Southern Ry. Co.* v. *United States,* 222 U. S. 20; *Mondou* v. *N. Y., N. H. & H. R. Co.,* 223 U. S. 1.

The laws are void in part and hence void as a whole. *Ill. Cent. R. Co.* v. *McKendree,* 203 U. S. 514; *Cotting* v. *Godard,* 183 U. S. 79, 112; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 564.

A general law upon its face applicable to all, yet void as to some, cannot be sustained as to the part. *United States* v. *Ju Toy,* 198 U. S. 253, 262; *United States* v. *Reese,* 92 U. S. 214, 222; *Trade Mark Cases,* 100 U. S. 82, 98–99; *Allen* v. *Louisiana,* 103 U. S. 80; *Baldwin* v. *Franks,* 120 U. S. 678, 685–689; *Poindexter* v. *Greenhow,* 114 U. S. 270, 305; *Ill. Cent. Ry. Co.* v. *McKendree,* 203 U. S. 514, 529; *Howard* v. *Ill. Cent. R. Co.,* 207 U. S. 463.

The provision in the two-cent fare law that makes that rate apply only to roads having more than forty-five miles in length is clearly discriminatory for this reason. *Cotting* v. *Godard,* 183 U. S. 79, 112; *Gulf, C. & S. F. R. R. Co.* v. *Ellis,* 165 U. S. 150–159; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 564.

There was the right to continue the litigation previously

instituted as against the rates fixed by the acts of 1907. The State is in no position to raise the question.

Amendatory and supplementary matter can in the interest of justice be treated as an original bill. A court will freely construe a bill to be original or supplementary as its character warrants. *Kennedy* v. *Bank*, 8 How. 586, 609, 610; *Great Western Tel. Co.* v. *Purdy*, 162 U. S. 329, 335; *Schenck* v. *Peay*, Woolw. 175, 21 Fed. Cas. 667, 669, No. 12450; *Ross* v. *Ft. Wayne*, 58 Fed. Rep. 404, 406; *Vigneron* v. *Auto Time Saver Repair Kit Co.*, 171 Fed. Rep. 580, 581; *MacIntosh* v. *Flint & P. M. R. Co.*, 34 Fed. Rep. 582, 614; *Neale* v. *Neale*, 9 Wall. 1.

The bill, however, was properly supplementary. Story on Equity Pleading (10th ed.), §§ 336, 345.

The bill was not multifarious. *Perkins* v. *Nor. Pac. R. Co.*, 155 Fed. Rep. 445, 447, 448; *Salvidge* v. *Hyde*, 5 Mad. 138; *Hayden* v. *Thompson*, 71 Fed. Rep. 60, 67; *Brown* v. *Safe Deposit Co.*, 128 U. S. 403, 412; *Grant* v. *Phœnix L. Ins. Co.*, 121 U. S. 105; *Nelson* v. *Hill*, 5 How. 127; *United States* v. *Flournoy Live Stock Co.*, 69 Fed. Rep. 886; *Way* v. *Bragaw*, 16 N. J. Eq. 213; Story, Equity Pleading, 10th ed., 285–286; Foster, Fed. Pr. 75; *Virginia* v. *West Virginia*, 206 U. S. 290.

There was the right to enjoin state officers if the rates were confiscatory. *Smyth* v. *Ames*, 169 U. S. 466; *Ex parte Young*, 209 U. S. 123; *Hunter* v. *Wood*, 209 U. S. 205; *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210; *Willcox* v. *Cons. Gas Co.*, 212 U. S. 19; 161 Fed. Rep. 419; 168 Fed. Rep. 317; *A., T. & S. F. R. Co.* v. *Love*, 174 Fed. Rep. 59; *M., K. & T. R. Co.* v. *Love*, 177 Fed. Rep. 493; *S. C.*, 185 Fed. Rep. 321; certiorari denied, 218 U. S. 675; 220 U. S. 618; *Shepard* v. *Nor. Pac. R. Co.*, 184 Fed. Rep. 765; *Re Arkansas Rates*, 187 Fed. Rep. 290.

*Mr. Gardiner Lathrop* also for the Railroad Companies, appellees and cross-appellants:

The commerce clause of the Constitution gives to Con-

gress exclusive and plenary power over commerce among the States and any state legislation which directly affects or discriminates against such commerce is void.

The power of the General Government over commerce among the States by the great artificial highways of rail is just as comprehensive and controlling and all-embracing and exclusive of state burden or interference as it is over such commerce by the great natural highways of water. *Perkins* v. *Nor. Pac. Ry. Co.*, 155 Fed. Rep. 445, 454; *Pensacola Tel. Co.* v. *West &c. Tel. Co.*, 96 U. S. 1; *California* v. *Pacific R. R. Co.*, 127 U. S. 1; *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312, 342; *In re Debs*, 158 U. S. 564, 590, 591; *Employers' Liability Cases*, 223 U. S. 1; *Swift* v. *United States*, 196 U. S. 375, 398; *Loewe* v. *Lawlor*, 208 U. S. 274, 299; *United States* v. *Rio Grande Dam Irrigation Co.*, 174 U. S. 690; *Railroad Co.* v. *Maryland*, 21 Wall. 456.

The power of the State over local rates was unquestioned in the early history of railway transportation when railroads operated within the limits of the State which created them and all traffic was intrastate. But that power has been necessarily curtailed by the development of the railway systems, the legislation of Congress, the growth of commerce among the States and the method of handling all commerce indiscriminately on the same trains, whether intrastate or interstate, so that whenever local rates directly affect interstate rates the national authority is supreme and state regulation is superseded. *Southern Ry. Co.* v. *Reid*, 222 U. S. 424; *Saunders* v. *Southern Express Co.*, 18 I. C. C. 415, 421.

Every state law, regardless of the purpose for which it was passed, whose direct and necessary effect is substantially to interfere with interstate commerce, is void. *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1; *Galveston, H. & T. R. Co.* v. *Texas*, 210 U. S. 217, 227; *Ludwig* v. *West. Un. Tel. Co.*, 216 U. S. 162.

The compelling force of competition in the adjustment of interstate rates to meet state-made rates demonstrates the direct effect of such rates upon interstate commerce.

Competition is a distinct and most important factor in the making and adjustment of rates. As a vital force in transportation, it is controlling and irresistible if traffic is to be transported by a given line between points where there are other transportation lines, either rail or water.

The law of competition is just as forceful in commerce as the law of gravitation is over matter. *Int. Comm. Comm. v. B. & O. Railroad*, 145 U. S. 263, 276; *Cin. N., O. & Tex. Pac. Railway v. Int. Comm. Comm.*, 162 U. S. 184; *Int. Comm. Comm. v. B. & O. Railroad Co.*, 43 Fed. Rep. 37; *Int. Comm. Comm. v. Alabama Midland Ry.*, 168 U. S. 144; *Louisville &c. R. R. Co. v. Behlmer*, 175 U. S. 648, 670–2; *East Tenn. &c. Ry. Co. v. Int. Comm. Comm.*, 181 U. S. 1, 18–19; *Louis. & Nash. R. R. Co. v. Eubank*, 184 U. S. 27; *Northern Securities Co. v. United States*, 193 U. S. 197, 337, 338; *Int. Comm. Comm. v. Chic. G. W. Ry.*, 209 U. S. 108; *Int. Comm. Comm. v. Diffenbaugh*, 222 U. S. 42, 48; *Shepard v. Nor. Pac. Ry. Co.*, 184 Fed. Rep. 765, 792; *Re Arkansas Rate Cases*, 187 Fed. Rep. 290.

Analogous cases decided by this court show that this doctrine has already had express judicial sanction. The *Daniel Ball*, 10 Wall. 557; *Gilman v. Philadelphia*, 3 Wall. 724; *Hall v. DeCuir*, 95 U. S. 485; *Wabash &c. Ry. Co. v. Illinois*, 118 U. S. 557, 572–3; *Southern Ry. Co. v. United States*, 222 U. S. 20; *Nor Pac. Ry. Co. v. Washington*, 222 U. S. 370.

The proviso contained in the first section of the Interstate Commerce Act does not militate against the view that the State is powerless to prescribe intrastate rates in cases where interstate rates are directly and necessarily affected. *Cooley v. Wardens*, 12 How. 318; *Gunn v. Barry*, 15 Wall. 623; *Railway v. Abilene Cotton Oil Co.*, 204 U. S. 426.

Hence, the proviso leaves the States just as they have been ever since the case of *Gibbons* v. *Ogden;* in control of the transportation of passengers or property wholly within their borders which is "completely," "exclusively" and "purely" internal commerce and which does not "affect other States."

*Mr. R. C. Johnson,* Attorney General, and *Mr. P. W. Dougherty,* Assistant Attorney General, of South Dakota; *Mr. Grant G. Martin,* Attorney General of Nebraska; *Mr. George E. Cosson,* Attorney General of Iowa, and *Mr. J. H. Henderson, Mr. Jno. S. Dawson,* Attorney General, and *Mr. S. M. Brewster,* Assistant Attorney General, of Kansas; *Mr. R. C. Brickell,* Attorney General of Alabama, and *Mr. Harry C. Selheimer; Mr. Charles West,* Attorney General of Oklahoma, and *Mr. Frederick N. Judson,* filed a brief on behalf of the States of South Dakota, Nebraska, Iowa, Kansas, Alabama and Oklahoma, *amici curiæ.*

*Mr. William T. Thompson,* Attorney General of Nebraska; and *Mr. Jared How,* also filed briefs as *amici curiæ.*

MR. JUSTICE HUGHES, after making the above statement, delivered the opinion of the court.

1. The contention of the appellants that the court erred in permitting the filing of the amended and supplemental bills is without merit. Although the commodity rate act of 1907 repealed that of 1905, it saved the penalties and liabilities incurred under the repealed statute. Both the original and supplemental bills proceeded upon the broad ground that the returns of the companies from their intrastate business, prior to the act of 1905, were unreasonably low and that any reduction in rates would

only diminish the income already inadequate. The additional legislation pending the suits, and the substitution of slightly higher rates on certain commodities embraced in the earlier act, did not alter the essential features of the controversy. There was identity of parties and subject-matter, although nominally different acts were involved. To have required original bills would have involved double litigation, double costs and great delay. The ends of justice were advanced by allowing the amended and supplemental bills and we are not inclined to interfere with the reasonable discretion of the trial judge in a matter of practice which in no way violated any of the substantial rights of the appellants.

Neither can it be said that the state court had prior jurisdiction. That the State filed in one of its courts bills for the enforcement of the act of 1907, before the actual filing of the supplemental bills, may be true; but the application for leave to file the supplemental bills was pending in the Circuit Court of the United States and action was suspended, merely to give opportunity for hearing, the court meanwhile restraining the enforcement of the new rates. In view of the pending bills assailing the act of 1905, the substantial identity of the question arising under the acts of 1907, and the pendency of the motion for leave to file supplemental bills, we are clearly of opinion that priority of jurisdiction belonged to the United States and the state court could not properly oust that jurisdiction.

2. It is insisted by the cross-appellants that the legislative acts, although relating exclusively to intrastate transportation, constituted an unwarrantable interference with interstate commerce and that the decrees should have afforded relief upon this ground. We need not review the arguments addressed to conditions of transportation in Missouri and the relation of intrastate to interstate rates for while the case has its special facts by

reason of the location of the State, and the use of the Mississippi and Missouri rivers as basing points in rate-making, the controlling question thus presented with reference to the authority of the State to prescribe reasonable intrastate rates throughout its territory, unless limited by the exercise on the part of Congress of its constitutional power over interstate commerce and its instruments, is not to be distinguished in any material respect from that which was considered and decided in the *Minnesota Rate Cases, ante,* p. 352. For the reasons stated in the opinion in those cases, it must be held that the court below properly refused to sustain this objection to the Missouri statutes.

3. We are thus brought to the question whether the action of the State was confiscatory, that is, whether by the reduction in rates of which complaint is made, the carriers were denied the just compensation to which they were entitled for the use of their property in the public service. It is to be observed that the freight rate acts of 1907 applied only to a portion of freight transportation, that is, to the transportation of specified commodities in carload lots. But, as we have said, it is contended that the return from the intrastate business was already inadequate and that the scope of the State's action in the passage of the passenger fare act and the commodity rate acts was such as necessarily to preclude a fair return upon that business taken as a whole. If it be assumed that the question of the profitableness of the entire intrastate operations is thus presented, the inquiry leads at once to a consideration of the fair value of the property devoted to the public use.

The findings of value made by the court below, in the case of seven [1] of the nine companies were the same as

---

[1] These companies were the Chicago, Burlington & Quincy, St. Louis & San Francisco, Atchison, Topeka & Sante Fe, Chicago, Rock Island

the valuations placed respectively upon the properties by the state assessing board, for the purpose of taxation, multiplied by three.[1] The multiplication was made because the assessments were on the basis of one-third of the value in the judgment of the state board. In the case of two of the companies, the St. Louis & Hannibal and the Kansas City, Clinton & Springfield, the value as found was equal to twice the assessed valuation, that is, the value was taken to be two-thirds of the estimate of the assessing board.

None of the members of the state assessing board was examined. There is no satisfactory proof of the grounds of their judgment. Nor was it shown that these valuations, made by them for the purposes of taxation, were upon a basis which could properly be taken in determining the fair value, where the sufficiency of prescribed rates is involved and the issue is one of confiscation.

It is urged that there was other evidence in support of the conclusions reached. The court below, while finding values equal to those estimated by the state assessing board, also found that apart from the valuations of the state board, and upon the whole evidence, the property was at least worth the amounts mentioned in the findings. It was said that there had been considered "the immense terminal values of most of the roads, the amount of stock and bonds outstanding, what it would cost to duplicate the properties both with and without terminals in the large cities, and all the evidence bearing on present values."

---

& Pacific, Kansas City Southern, Missouri, Kansas & Texas, and Chicago Great Western.

[1] In certain instances there are slight differences which appear to be accounted for by additions to the state assessments of certain local assessments. But in every instance, the value as found corresponds to what was assumed to be three times the assessed valuation in the statements of computations submitted to the court.

On examining the evidence, however, we find it to be too general and inconclusive to be regarded as sufficient proof to sustain the values as found. Undoubtedly, the companies possessed valuable. terminals, but what the values were was not suitably shown. There is an absence. of evidence, appropriately specific, dealing with the lands, improvements, structures, equipment and other property owned by each company and showing what the various items of property were worth. It would seem manifest from the character of the evidence which can be supposed to have relation to value, that reliance was principally placed upon the estimates of the state assessing board. There was proof of the amount of stocks and bonds, of earnings, and also testimony as to the cost of certain recent construction, but while these matters could properly be considered in reaching a conclusion, we fail to find any adequate basis for the definite findings of value that have been made. We are referred to the testimony of two witnesses for the complainants, men of considerable experience in railroad affairs, but this consisted of broad estimates. Thus, one of these witnesses testified as follows:

"Q. I want to ask you a question as to the Rock Island, the St. Louis & Hannibal, the Kansas City Southern, the M. K. & T., the Kansas City, Clinton & Springfield, and the Chicago Great Western. In speaking of the Rock Island, I include the St. Louis, Kansas City and Colorado.

"The figures in those cases being based upon three times the valuation of said property, as shown by the State Board's of Equalization assessment for the year 1907, I think it is . . . and the Atchison, Topeka & Santa Fe Railway Company.

"One or two of these roads had the figures for 1908, and I want to see which those are. I think those I named are all for 1907, and the Burlington figures are for 1908.

"Now I want to ask you the general question as to each

and all of those roads, whether in your opinion each of those roads is worth an amount equal to three times the valuation fixed by the State Board of Equalization in those years—at least that much?

"A. Yes sir, in a general way I should say the value of those roads is at least three times the amount shown in the report of the State Board of Equalization of Missouri, for the years 1907 and 1908. I have examined both books, and substantially there is not very much difference.

"Q. I do not remember whether we gave the Frisco figures for 1907 or for 1908. But you make them applicable to all the roads you have testified to, as to both 1907 and 1908, do you?

"A. Yes sir, with the exception possibly of the St. Louis & Hannibal and of the Kansas City, Clinton & Springfield. I am not certain as to those roads being worth three times the assessed value, as shown in the printed report of the proceedings of the State Board of Equalization.

"Q. As to each of those roads, which are losing ventures any way, according to the testimony here, about what would you say they are worth, at least how much?

"A. Well, I should say twice as much as the assessed valuation.

"Q. Your statement, with the exception you make as to the St. Louis & Hannibal, and the Kansas City, Clinton & Springfield Railroads, is applicable to all the roads whose cases have been tried here?

"A. Yes sir."

Another witness testified with respect to the Rock Island road that the value was not less than three times the assessed valuation, that is, not less than the amount taken on this basis as the valuation of the state board.

It is clear that testimony of this general character cannot be deemed sufficient to support a finding of con-

fiscation or to justify the annulment of the legislative acts of the State.

In the case of the Chicago, Burlington & Quincy Company, the value of the property in the State of Missouri was fixed at the amount of $53,172,907.83. This amount, as stated in the exhibit of computations submitted by the company to the court, was precisely three times "the assessment for 1908" ($17,724,302.61), the assessment being made upon the basis of one-third of the board's estimate. The court found that the mileage in Missouri was 1136.34 miles and that the value as fixed amounted to $46,793 a mile. If this valuation were extended to the mileage of the entire system, it would mean that for the purpose of determining the validity of prescribed rates and the issue of confiscation, the Burlington property as a whole should be regarded as worth over $400,000,000. According to the evidence, as stated in the brief of counsel for the company, the actual bonded indebtedness of the company at the time in question was $174,172,000 and its stock, $110,839,100, making a total of $285,011,100. In short, the contention would be, on this basis of valuation extended to the system, that unless the Burlington were permitted to calculate its fair return upon an amount exceeding by more than $115,000,000 its total capitalization, it would be deprived of its property without due process of law.

Manifestly, a finding of confiscation could not be based on such a valuation in the absence of clear and convincing proof that the value actually existed and that the different items of property were estimated respectively by correct methods and in accordance with proper criteria of value. This proof was lacking. In the case of the other roads, although the special considerations which have been mentioned with respect to the Burlington property may not be applicable, still we are left in uncertainty as to the correctness of specific valuations which have been made.

It cannot be regarded as sufficient to introduce assessments, or valuations made for the purposes of taxation; and this is particularly true when the principles governing the assessments are not properly shown, and for all that appears, they may have rested upon methods of appraisement which would be inadmissible in ascertaining the reasonable value of the property as a basis for charges to the public. *Minnesota Rate Cases, ante,* p. 352.

There is a further question, and that is, whether these estimates of value which the court below adopted in its findings were accepted by the defendants and hence are not open to objection here. It is undoubtedly true that these estimates were used in the computations, on both sides, which were submitted to the court. The amounts assessed respectively were conceded and it was also agreed that the assessments were made at one-third the value in the judgment of the board. Concessions of this sort were made at various times during the taking of evidence and the following extracts from the record are sufficient, we think, to show their nature.

Thus, with respect to the Burlington road, on the original bill, the following stipulation was made before the Master:

"It is agreed between the parties that the basis of the assessment is upon the basis of one-third of the value of the property, in the judgment of the Board."

And later, on the hearing before the court on the amended and supplemental bills, the following took place:

"Mr. Hagerman: We have a stipulation in the other three cases that the State Board of Railroad and Warehouse assessment was based upon one-third of what they regarded as a $33^{1}/_{3}$ per cent. valuation.

"General Hadley: Whatever the stipulation was, it would be equally applicable to the other fifteen roads as it was to the three.

"The Court: If you are able to make an agreed statement now, better do so.

"Mr. Hagerman: I would like to get the fact, whatever it may be.

"The Court: Who assesses the railroads?

"Mr. Hagerman: The state officers.

"Mr. Lehmann: We do not accept that as indicating the real value because under the law the State Board is required to take into account a great many things, the amount of the bonds and the stock, the franchises, the income of the property, and the income might be unduly high, and upon that basis give an unduly high valuation to the property.

"Mr. Hagerman: I did not ask you to admit that is the value of itself, but that the State Board valuation is fixed by them upon three times the amount of the returns.

"Mr. Lehmann: We object to that as immaterial and irrelevant.

"Mr. Hagerman: Will you admit it subject to the objection?

"General Hadley: My recollection is that the stipulation or understanding was that the State Board assessment was one-third of what they regarded as the value of the property, including the franchise.

"Mr. Hagerman: One-third of the value as listed in the statement. I shall follow it by the introduction of a statement.

"General Hadley: That is all right."

Our conclusion is that the stipulation extended only to the fact that the judgment of the board was as stated. While the evidence on the question of value, considering the character of the issue involved, was extremely unsatisfactory and these estimates based upon the assessments were used by both parties in the calculations which were submitted to the court, still it cannot be said that there was an agreement as to the values. Nor did the

court in. making its findings proceed upon the view that
the values had been stipulated.    We can entertain `no
doubt upon this record that the defendants are free to
urge, as they do urge, that the values as found are not
supported by the proof.

It is not necessary to consider the merits of the conten-
tion based on the assumption that in the item of the
assessment entitled "All other property" the state
assessors included franchises of the companies.    There is
no clear showing as to what they did include in this item.
As we have said, they were not called as witnesses and
in many essential particulars we are unable to judge upon
what basis they made their specific appraisements.

4. The value of the entire property within the State, as
found, was apportioned between the interstate and intra-
state business, passenger and freight, according to the
gross revenue derived from each.

The reasons for disapproving this method were stated
in the *Minnesota Rate Cases, ante.* p. 352, and the ruling
there made is controlling here.

5. A large part of the controversy relates to the division
of expenses between the interstate and intrastate traffic.
It is contended by the defendants that the division should
have been made with respect to freight according to the
relation of ton-miles, and that the passenger expense
should have been divided according to the relation of
passenger-miles, or, to include another factor upon which
the defendants insist, according to passenger-miles and
"service rendered," meaning by the latter that the
quality of the service should be taken into account.

The court made the division in each case upon the basis
of gross revenue with an addition for the extra cost of
intrastate traffic, this being estimated at not less than
fifty per cent. in the case of freight and not less than
twenty-five per cent. in the case of passengers.

It is evident that in an apportionment of expenses

either upon the revenue method, or upon the ton-mile and passenger-mile method, relations may be assumed which do not in fact exist. Thus, a division of expenses according to gross revenue assumes that the cost in relation to revenue. is the same with respect both to intrastate and interstate traffic; in fact, it may be very different. A greater average sum may be charged for intrastate than for interstate hauls; and this greater sum may or may not be equal to the difference in cost. In the Minnesota cases, the Master found that the revenue per ton per mile derived from intrastate business as compared with interstate business, was, with respect to the Northern Pacific company, as 1.4387 to 1.0000, and with respect to the Great Northern company, as 2.02894 to 1.00000. And, there is further illustration in the present case, it appearing, for example, that in the case of the St. Louis & San Francisco company, the revenue per ton per mile from the intrastate business, as compared with the interstate business was as 1.7286 to 1.0000; and in that of the Chicago, Burlington & Quincy company, approximately as 2 to 1. An apportionment of expenses on the basis of revenue which did not take into consideration the differences in revenue in relation to cost in the two classes of traffic would be plainly inaccurate.

On the other hand, a division according to ton-miles assumes that the cost of moving a ton of intrastate freight one mile is the same on the average as the cost of moving a ton of interstate freight one mile. If the average cost differs in the two classes of traffic, the difference must be allowed for in order to make a correct apportionment of the total expense.

When the apportionment is on the revenue basis, with an allowance such as was made by the court below for the assumed extra cost of intrastate traffic, it is manifest that the purpose is to express in a given percentage the additional cost of intrastate traffic in proportion to. revenue.

This was clearly illustrated in the computations made by the Master in the *Minnesota Rate Cases, ante,* p. 352. The Master concluded that the cost per ton-mile of doing intrastate freight business was two and one-half times that of doing interstate freight business. The division of expenses was then made according to ton-miles after increasing the intrastate ton-miles two and one-half times. To reach the same result on the revenue basis it was necessary to ascertain the relation of cost per ton-mile in proportion to revenue, and for this purpose, for example, in the Northern Pacific case, the relation of cost per ton-mile (2.5 to 1.0) was divided by the relation of revenue per ton-mile (1.4387 to 1.0000) and the relation of cost in proportion to revenue was thus found to be as 1.7377 to 1.0000. The division of expenses was then made upon the revenue basis after multiplying the intrastate revenue by 1.7377; and the result, of course, was identical with that obtained upon the ton-mile basis as already stated.

The allowance of 50 per cent. (which was made below) for the extra cost corresponds in its nature to the 73.77 per cent. allowed in the *Minnesota Case* on the "equated revenue basis." If, for example, it were assumed that it cost three times as much per ton-mile to do the intrastate freight business as the interstate, and the revenue per ton-mile of the former was twice that of the latter, the cost in proportion to revenue would be 50 per cent. more. Or, if the assumption were that the intrastate freight business cost two and one-half times as much per ton-mile as the interstate, and the revenue per ton-mile of the former, as compared with the latter, was as 1.66 to 1.00 (as it is said to be in the case of the Atchison, Topeka & Santa Fe company) the extra cost in proportion to revenue would be substantially 50 per cent.

As the counsel for the railroad companies says in his brief, the court below "took the estimates of two to four

times extra cost given by witnesses, and because of extra state or short-haul revenue per mile and other considerations, reduced them to 50 per cent., saying that this as a minimum added to the equal division upon the revenue basis, brought to each road a result that was fair, just and representative."

We have then in substance the same question that was presented in the *Minnesota Cases* with respect to the evidence of the additional cost of transacting the intrastate business. There are numerous expressions of judgment on the part of the witnesses as to the amount of the intrastate cost, some estimating it on the revenue basis and others on the ton-mile basis. The estimates took a similarly wide range, making the cost of the intrastate or short-haul business from two to eight or more times that of the interstate or long-haul business. There was also testimony on each side as to certain tests, but these covered only a few days. We can reach no different conclusion from that stated in the decision to which we have referred, that, in an issue of this character involving the constitutional validity of state action, general estimates of the sort here submitted with respect to a subject so intricate and important should not be accepted as adequate proof to sustain a finding of confiscation. *Minnesota Rate Cases, ante,* p. 352.

For the reasons that have been set forth, we must conclude that, save in the cases mentioned below, the complainants failed to sustain their bills.

The exceptions are these: In the case of the ·St. Louis & Hannibal company, operating, as found by the court below, 120.61 miles within the State, the net revenue from the entire Missouri business, interstate and intrastate, for the fiscal year ending June 30, 1908, appears to have been $15,687.18. In the case of the Kansas City, Clinton & Springfield company, operating 151.01 miles within the State, the net revenue from the entire business therein,

interstate and intrastate, for the same year amounted to $32,500.72. In each of these cases the experts employed by the parties unite in the statement that it is apparent from the results shown that "upon neither the revenue nor ton-mile nor passenger-mile theory of expenses can any adequate return on the investment be earned."

In the case of the Chicago Great Western company, operating 84.43 miles of road within the State, the entire net revenue from the Missouri business, interstate and intrastate, for the six months ending December 31, 1907, being the period taken by both parties for the purpose of calculation, amounted to $41,839.06. From our examination of the evidence and the various computations we are satisfied in this case, as in the two others above-mentioned, that errors attributable either to valuation or to apportionments cannot be regarded as sufficiently great to change the result.

The decrees in these three cases will accordingly be affirmed, with the modification that the Railroad and Warehouse Commissioners, and the Attorney-General of the State, may apply at any time to the court by bill or otherwise, as they may be advised, for a further order or decree whenever it shall appear, that by reason of a change in circumstances the rates fixed by the State's acts are sufficient to yield to these companies reasonable compensation for the services rendered.

The contention raised by the complainants, that these legislative acts cannot be enforced against one company unless enforced against all, cannot be sustained. The argument, in effect, is that although the charges of carriers may be clearly exorbitant, the State is powerless to compel them to put into effect reasonable rates because as to another carrier differently situated the rates thus prescribed might be unreasonably low. The acts are valid upon their face as a proper exercise of governmental authority in the establishment of reasonable rates, and

each complainant in order to succeed in assailing them must show that as to it the rates are confiscatory.

*The decrees in Numbers 9, 12, 339, 340, 341, 342, 345, 346, 349, 350, 357 and 358 are reversed and the cases remanded with directions to dismiss the bills respectively without prejudice.*

*The decrees in Numbers 351, 352, 365, 366, 367 and 368, are modified as stated in the opinion and, as modified, are affirmed.*