ST. LOUIS & S. F. R. CO. v. HADLEY, Atty. Gen., et al. (18 cases).

(Circuit Court, W. D. Missouri. March 31, 1908.)

Nos. 2988–3004.

1. STATUTES—RETROACTIVE EFFECT—REPEALING ACT—PENDING ACTIONS—SAVING CLAUSE.

The repeal of a statute fixing railroad rates by a new statute, which enacts substituted rates, and provides that penalties incurred for violation of the repealed law may still be enforced, does not abate pending suits to enjoin the enforcement of the old statute, and supplemental bills may be filed therein to enjoin the enforcement of the new rates.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 374.]

2. INJUNCTION—SUIT TO ENJOIN ENFORCEMENT OF STATUTE REGULATING RATES—PARTIES.

Under the Constitution and statutes of Missouri relating to the Attorney General, and especially Laws 1907, p. 13, c. 1, § 61, which appropri-

ates $20,000 per year to be drawn by the Attorney General and expended under his direction "in the prosecution or defense of suits heretofore brought or that may hereafter be brought by or against any railroad company wherein the validity of any act of the General Assembly may be involved," the Attorney General is charged with the duty of defending the validity of the state statutes regulating railroad rates, and both he and the members of the State Board of Railroad Commissioners are proper parties defendant to a suit to enjoin the enforcement of such statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 202–220.]

3. COURTS—JURISDICTION OF FEDERAL COURTS—SUITS AGAINST STATE.

A suit against the Attorney General and Board of Railroad Commissioners of a state to enjoin them from enforcing state statutes regulating railroad rates, on the ground that they are confiscatory and unconstitutional, is not one against the state of which a federal court is denied jurisdiction by the eleventh constitutional amendment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 844½: vol. 44, States, §§ 191, 192.

Federal jurisdiction of suits against state, see note to 13 C. C. A. 165.]

See 155 Fed. 220.

Frank Hagerman and others, for complainants.

Herbert S. Hadley, Atty. Gen., John Kennish, Asst. Atty. Gen., F. W. Lehmann, and S. B. Ladd, for defendants.

SMITH McPHERSON, District Judge. Here are 18 cases, brought by as many railway companies of the state, against the Attorney General, Railroad Commissioners of the state, county judges, county treasurer, and shippers. The purpose of the bill in each case is to enjoin the enforcement of state railway rate statutes, on the ground that the rates thus fixed by legislative enactment are not remunerative, but are confiscatory. The original bill of complaint in each case was filed in 1905 assailing an act approved April 15, 1905 (Laws 1905, p. 102 [Ann. St. 1906, p. 1005]), fixing rates. In June of that year temporary injunctions were issued. In December of that year answers were filed, and on defendant's motion the cases were referred to a special master, before whom the cases are still pending. That statute was enacted in lieu of certain sections of the Revised Statutes of the state. In 1907 the Legislature enacted a statute which was approved March 19, 1907. This statute, after referring to the one of 1905, declared that the same "be and hereby are repealed, and the following to be known as sections 1194, 1194–a–1, 1194 b–1, and 1194 c–1 of said Revised Statutes, are enacted in lieu thereof." Then follow four sections designated as above. By still another statute passenger fares were fixed at two cents per mile, heretofore three cents per mile. In June, 1907, each company filed another bill, concerning which, see the opinion by this court in this case in 155 Fed. 220. Since that time the cases have been pending before the master, the delay occasioned in part at least by an awaiting of a decision of the Supreme Court in what are known as the Minnesota and North Carolina cases. This court declined to grant a temporary injunction as to the passenger rates, but granted such writ as to the freight rates. Both statutes of 1907

provide for penalties for a violation of the enactment, and expressly recite that any liability or penalty incurred under the statute of 1905 may still be enforced. It is now claimed that the original cases are at an end because the statute of 1905 has been repealed. The court cannot so hold. As has been noticed, for the statute when repealed there was a substitute enacted. One rate was cut and another fixed, with the penalties under the prior statute remaining. This does not overthrow the original cases. They are rightfully pending with part of the subject-matter still in existence, and a new alleged grievance in place of the old. This new grievance, if one, should be brought forward by a supplemental bill; that being the office of such a bill.

Two shippers on each road are made defendants. That it is proper to make them parties cannot be in doubt, as they have a direct interest. Whether a decree herein will be binding on other shippers is a question not now for decision. And that the county judges and prosecutors have to do with these laws is plain. But these matters are exceedingly technical. The real question as to parties is as to making the Railroad Commissioners and Attorney General parties defendant. As to the right to make the Attorney General and the commissioners parties defendant is a question that has been argued for and against with much earnestness and by the citation of many authorities. At common law the office of Attorney General was the highest law office of the crown. He represented the crown in all legal matters, and was the responsible officer as to the legal duties and prerogatives, appearing in the courts of record and the House of Lords in all matters affecting the public, to the end that justice might be done in the name of the King. The duties of that office are not less in this country, and the specific mention of many things that he must do in behalf of the public and the state are not to be regarded as exclusive in the full performance of his duties. The Constitution and statutes of Missouri make special mention of many things that he is required to do. He is upon a salary, and cannot receive fees. He is a member of the State Board of Equalization and of Education, as well as other boards. He prosecutes suits on official bonds. He prosecutes railroads for refusing to grant proper rates to shippers. He must appear before the Interstate Commerce Commission when residents of the state are being wronged. He asks for, and receives, the aid of additional counsel. He sees to the enforcement of the banking laws, and proceeds against express companies and railroad companies, and looks after forfeitures. These and a great many other things he is specifically required to do. And the importance and dignity of his office are such that in most instances he is relieved from making oath to papers that he is permitted or required to file. And then, out of apprehension, because certain things are specifically mentioned, that the conclusion would be arrived at by construction that all other matters were excluded, section 4943 of the Revised Statutes was adopted (Rev. St. 1899 [Ann. St. 1906, p. 2635]) requiring that officer to institute and prosecute all suits and other proceedings at law and in equity requisite or necessary to protect the rights and

interests of the state and to enforce any and all rights, interests, or claims of the state against any and all persons and corporations. It would seem that from the foregoing there could be no doubt but that it is the duty of the Attorney General to enforce the statutes in question presented by these cases, if valid, not only by virtue of the duties pertaining to that office by common law, but as well by the statutes just alluded to.

But there is a further statute which counsel on both sides have overlooked. Chapter 1, p. 13, Laws 1907, by section 61 thereof eliminates all doubt by appropriating $20,000 per year to be drawn by the Attorney General from time to time, "which said sum shall be expended under the direction of the Attorney General in the prosecution or defense of suits heretofore brought, or that may hereafter be brought by or against any railroad company, wherein the validity of any act of the General Assembly may become involved or contested." It will be noticed that this appropriation of this large sum of money is made, not only to the end that the Attorney General may seek to maintain the validity of any statute brought in question by any case hereafter brought, but likewise covers cases heretofore brought. And in the light of that section appropriating $40,000 for the biennial period of two years, to be drawn by the Attorney General and expended under his direction, leaves no room for argument that it is the duty of the Attorney General to enforce all statutes enacted by the General Assembly, and see to it to the best of his ability that no court by decree or judgment holds the state enactments void. Without scheduling the different statutes, the duties of the commissioners are likewise plain. They are vested with authority to fix rates, and, should the statutes in question be overthrown as being void, they will at once fix some other rate in their judgment valid. The question as to making the commissioners parties defendant has been put at rest by the case of Railroad v. Hickman, 183 U. S. 53, 22 Sup. Ct. 18, 46 L. Ed. 78.

Again, as when the cases were brought and first argued, it is urged that the state in effect is being sued in violation of the eleventh amendment, and the question has again been argued with force, logic, and eloquence. That a determined effort has been made by the use of words, phrasing, and forms within the past two years, regardless of substance, effect and meaning by the states to deprive the United States courts of jurisdiction vested by the Constitution and laws enacted by Congress is known by all. The argument is to the effect that all litigation of and concerning the fairness, and validity as well, of state statutes, shall be in the courts of the state whose legislation is assailed, leaving the right and the only right of carrying questions of law to the United States Supreme Court by writ of error, but likewise insisting that in cases as to the reasonableness of rates, dependent wholly upon facts, that a writ of error shall be unavailing, and that the state courts of the state whose state legislation is assailed shall alone and finally decide the case. And that this will be so in a chancery case as well as in an action at law by the only remedy by writ of error to a state Supreme Court, when the case depends upon questions of fact, has been held by the

Supreme Court in Egan v. Hart, 165 U. S. 188, 17 Sup. Ct. 300, 41 L. Ed. 680. There are others who believe that all matters both of fact and law arising under the Constitution of the United States should in the end be decided by the only court created for that purpose. So it is that a sharp conflict is presented. Almost from the beginning of our government this question at short recurrent periods has arisen, but generally concluded by the Supreme Court holding that this is a national government with a national judiciary, and that the national Constitution is and shall forever remain the supreme law of the land, anything in the laws of any state to the contrary notwithstanding. When our government was organized, every one of the 13 states was in debt, and some of them well-nigh hopelessly so. In and out of both the national and state conventions the arguments were for and against whether a state could be sued in a national court. Hamilton and Marshall and Madison said it could not be done. Patrick Henry with his numerous doubts and opposition was filled with fear. Others, like James Wilson and Edmund Randolph, said the state would and ought to be suable by a citizen of another state for wrongs done. Near the end of Washington's first term, the famous suit of Chisholm v. Georgia, 2 Dall. 419, 1 L. Ed. 440, was decided; the holding being that Chisholm, a citizen of South Carolina, could recover judgment for money that the state of Georgia justly owed him. It is said that within two days from that decision a resolution was offered in the Senate to amend the Constitution to prevent such suits by declaring that the judicial power shall not extend to any suit against a state by a citizen of another state. But that failed because it was urged that, notwithstanding the decision in the Chisholm Case, such jurisdiction had never extended nor existed. Thereupon new phrasing was adopted, and a new resolution was offered, reciting that "the judicial power of the United States shall not be construed to extend to," etc., shortly ripening into the eleventh amendment. The only purpose of that amendment was to prevent a state from being sued by its creditors, and history furnishes the proofs conclusive of the correctness of the statement. Those who are doubtful of this need only read what Chief Justice Marshall said in Cohen v. Virginia, 6 Wheat. 264, 5 L. Ed. 257. At common law from time immemorial a public officer was not allowed to justify under a void law or void order, but was compelled to make restitution of the property taken or to pay damages therefor. And such has been the uniform holdings in this country, and for the reasons that a void statute or void order is utterly without effect, and is wholly unavailing as a defense. Such has been and is the law of England, and such has been and is the law of this country. And why such should not be the law on the equity side of the docket by preventative remedies against threatened wrongs is difficult to conceive.

But the Supreme Court has held in the cases of Ex parte Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216, and Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, that in cases wherein the state as a state is affected that a suit against the officers is in effect one against the state, in contravention of the eleventh amend-

ment. It is to be noted that both the cases above referred to would have been decided as they were decided, if taken to the Supreme Court by writ of error to a state Supreme Court, or by appeal from a Circuit Court, if the eleventh amendment had never been adopted. This is so because in the Ayres Case a full, adequate, and complete remedy at law existed, and in the case of Fitts v. McGhee the sole purpose was to enjoin criminal proceedings. But it is now too late to object to the jurisdiction of a Circuit Court to enjoin the enforcement of a rate statute alleged to be void because confiscatory, although concededly the holdings now are that the test is not whether the state is a party to the record by name, but is the state in effect a party? But in the case at bar the state as a state has no interest. And the state as a state is not attempting to confiscate property. It is the government of the state, first by its Legislature, and then by its officers, who, according to the allegations of the railways, are attempting to confiscate property. Whether such acts will amount to confiscation if carried out relate to the case on its merits. But the point to the whole matter is that the state is not seeking to act, and no effort is made to enjoin the state, either by name or in effect. And this distinction is not metaphysical, but is a substantial distinction, clearly and unmistakably pointed out by Justice Matthews in Poindexter v. Greenhow, 114 U. S. 270, 290, 5 Sup. Ct. 903, 914, 29 L. Ed. 185, wherein he said:

"In the discussion of such questions, the distinction between the government of a state and the state itself is important, and should be observed. In common speech and common apprehension they are usually regarded as identical; and as ordinarily the acts of the government are the acts of the state, because within the limits of the delegation of power, the government of the state is generally confounded with the state itself, and often the former is meant when the latter is mentioned. The state itself is an ideal person, intangible, invisible, immutable. The government is an agent, and, within the sphere of the agency, a perfect representative, but outside of that it is a lawless usurpation. The Constitution of the state is the limit of the authority of its government, and both government and state are subject to the supremacy of the Constitution of the United States, and of the laws made in pursuance thereof. So that, while it is true in respect to the government of a state, as was said in Langford v. United States, 101 U. S. 341, 25 L. Ed. 1010. that the maxim, 'that the King can do no wrong,' has no place in our system of government, yet it is also true, in respect to the state itself, that whatever wrong is attempted in its name is imputable to its government, and not to the state, for it can speak and act only by law—whatever it does say and do must be lawful. That which, therefore, is unlawful because made so by the supreme law, the Constitution of the United States, is not the word or deed of the state, but it is the mere wrong or trespass of these individual persons who falsely speak and act in its name."

So that it follows that the state of Missouri is not a party either by name or in effect. And this court has jurisdiction both of the subject-matter and of the parties, to inquire into the questions in the case, and on a final hearing decree whether the rates fixed by statutes are remunerative or confiscatory. On what basis the master shall report is not clear. Every person, whether a passenger or shipper, is entitled to have efficient service at reasonable rates, which the company must give for such compensation. Whether such charges for every person can be fixed by a decree is doubtful, and, in any

event, will be attended with much difficulty. But, if all earnings in the state for state business are to be taken in the aggregate, less expenses, the question is attended with difficulties, because of the matter of expense; it being difficult to apportion the expenses between the state and interstate business. If the parties cannot agree, the master should be directed by a supplemental order. These cases should be brought to a final decree, and that decree such as can be carried to the Supreme Court for final determination, and not for a reversal because of an error of the master or the court in determining the expenses. What would be still more to the point would be for the master to determine the expenses from the standpoint of both the railway company and the Attorney General. And there is no valid reason why the cases should not be brought to a conclusion within the next 90 days. And, if this is not done, the delay will not be chargeable to the court.

This memorandum opinion was written many weeks since, but withheld by request, awaiting the decisions of the Supreme Court in the Minnesota and North Carolina cases. Those cases were decided on the 23d instant adversely to the state officers. And it is deemed unnecessary to await the opinion, which this court has not yet seen.