ST. LOUIS & S. F. R. CO. v. BARKER, Atty. Gen., et al. (and seventeen other cases).

(District Court, W. D. Missouri, W. D: December 20, 1913. Supplemental Opinion January 30, 1914.)

Nos. 2988–3004, 3006.

1. APPEAL AND ERROR (§ 1198*)—REVERSAL OF DECREE—MANDATE—POWERS OF LOWER COURT AFTER REMAND.

A mandate from the Supreme Court reversing the decree of a District Court in an equity case and directing that court to "dismiss the bill without prejudice" leaves nothing to the discretion of the District Court as to dismissal of the bill, but it has power to retain the case for the purpose of considering and determining ancillary questions arising as a result of the suit.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4668; Dec. Dig. § 1198.*]

2. APPEAL AND ERROR (§ 1198*)—REVERSAL OF DECREE—JURISDICTION—POWERS OF LOWER COURT AFTER REMAND.

Railroad companies brought suits in a district court against state officers to enjoin the enforcement of legislative acts fixing maximum rates

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and fares, and preliminary, and afterward perpetual injunctions were granted on the giving by complainants of ordinary injunction bonds, conditioned for the payment to defendants or to any person becoming a defendant of all damages sustained by reason of the wrongful issuance of the injunctions. The decrees were reversed by the Supreme Court, with directions to dismiss without prejudice, and the mandates required the District Court "to dismiss the bill without prejudice." All the issues raised by the pleadings were passed on and determined by the Supreme Court. After the mandates were filed, certain shippers and passengers who, during the time the injunctions were in force, had paid rates and fares in excess of those fixed by the statutes applied for leave to intervene and have their claims to such excess payments determined and enforced against the railroad companies, to which the latter made no objections. *Held:* (1) That the matter of such interventions was one with which the defendant state officers had no concern; and (2) that, while the court was bound under the mandates to vacate the injunctions and dismiss the bills without prejudice, it had power to retain the cases on the docket for the purpose of collecting and disbursing such excess charges paid, and to that end to appoint a master before whom any claimant might voluntarily prove his claim.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4668; Dec. Dig. § 1198.*]

In Equity. Suit by the St. Louis & San Francisco Railroad Company against John T. Barker, Attorney General, and John M. Atkinson, John Kennish, Frank Wightman, H. B. Shaw, and W. F. Woerner, constituting the Public Service Commission, of the State of Missouri, heard with seventeen other cases against the same defendants. On entry of decrees after reversal and mandate.

Frank Hagerman and Eugene E. Ball, both of Kansas City, Mo., O. M. Spencer, of St. Joseph, Mo., Martin L. Clardy, of St. Louis, Mo., Gardiner Lathrop and Thomas R. Morrow, both of Kansas City, Mo., W. F. Evans, of St. Louis, Mo., S. W. Moore, of Kansas City, Mo., F. C. Dillard, of Chicago, Ill., Edward L. Scarritt, of Kansas City, Mo., S. H. West, of St. Louis, Mo., John H. Lucas, of Kansas City, Mo., James L. Minnis, of St. Louis, Mo., R. A. Brown, of St. Joseph, Mo., J. W. Jamison and Joseph M. Bryson, both of St. Louis, Mo., James G. Trimble, of Kansas City, Mo., and J. D. Hostetter, of Bowling Green, Mo., for complainant.

John T. Barker, Atty. Gen., W. M. Fitch, Asst. Atty. Gen., and E. J. Bean, of Jefferson City, Mo., for respondents.

SMITH McPHERSON, District Judge. These 18 cases of and concerning Missouri freight and passenger rates are pending on applications for decrees following mandates from the Supreme Court of the United States. By reason of the opinions and mandates of the Supreme Court, the cases, all of which are against the same defendants, should be placed in four groups, classified by number and railroad companies as complainants, as follows:

### Group One (1).

2988  St. Louis & San Francisco Railroad Company.
2989  Atchison, Topeka & Santa Fé Railway Company.
2991  Chicago, Rock Island & Pacific Railway Company.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2992  St. Louis, Kansas City & Colorado Railroad Company.
2993  Kansas City Southern Railway Company.
2997  Missouri, Kansas & Texas Railway Company.
2998  Chicago, Burlington & Quincy Railroad Company.

### Group Two (2).

2990  St. Louis Southwestern Railway Company.
2995  Missouri Pacific Railway Company.
2996  St. Louis, Iron Mountain & Southern Railway Company.
3000  The Wabash Railroad Company.
3004  Chicago, Milwaukee & St. Paul Railway Company.
3006  Chicago & Alton Railroad Company.

### Group Three (3).

2994  St. Louis & Hannibal Railway Company.
3002  Kansas City, Clinton & Springfield Railway Company.
3003  Chicago Great Western Railway Company.

### Group Four (4).

2999  Quincy, Omaha & Kansas City Railroad Company.
3001  St. Joseph & Grand Island Railway Company.

Cases in group one (1) were appealed to the Supreme Court and the decrees of this court were reversed.

Cases in group two (2) cover decrees of this court, resulting in effect in reversals by stipulation, as said cases were to abide the result of cases in group one (1).

. Cases in group three (3) were appealed and the decrees of this court were affirmed.

Cases in group four (4) were affirmed in effect by stipulation that said cases were to abide the result of cases in group three (3).

I deem it proper to recite the history of these cases as appears from the records of this and the Supreme Court:

The Legislature of Missouri enacted a statute, approved April 15, 1905, effective June 16, 1905, fixing certain commodity freight rates. The Governor of the state in returning said enactment, having signed the same on April 15, 1905, filed with the Secretary of State his message announcing his signature, and stated in effect that one of the rates seemed to him very low, but that he could not disapprove one section without nullifying the whole measure, and, as the judiciary can declare void the rate that is fixed on any class without affecting the remainder, he would sign the bill, claiming that the bill as a general measure was in the right direction; that the courts could, after hearing all the evidence, decide upon the reasonableness of the bill, and then that the railroad commissioners, or the next Legislature, could equalize such inequalities as may be found to exist in the measure and fix such rates as under the law announced by the courts was right and just to the railroads and to the people.

On June 16, 1905, the day said statute became effective, counsel for all the 18 companies presented to this court (then the circuit court) verified bills of complaint alleging that said statute was void, ᷉on-

tending said rates were confiscatory. I, sitting alone, granted restraining orders against the enforcement of the statute and set all the cases down for hearing on the application for a temporary injunction in each of the cases.

On June 27th, on application of the Attorney General, the hearing was continued until July 8, 1905, at which time counsel for both sides fully argued said application before Judge John F. Philips and myself, and the applications were taken under advisement. After conference that day we agreed that a temporary injunction should issue, whereupon I left the district for my home. July 12, 1905, Judge Philips announced our conclusion and then in my absence took up the question of the form of order to be entered and all questions as to the injunction bonds. He then entered an order of record reciting that the restraining orders should remain in force as a temporary injunction, and requiring an injunction bond in each case in the penalty of $10,000, conditioned to pay, in case the injunction be dissolved, all damages sustained by defendants or any of them, or any person becoming a defendant herein, and the defendants consenting to accept the individual bond of complainants. No objection was made by any one as to the amount of the bond. Judge Philips alone signed those orders in my absence from the state, but I had agreed in conference with him that an injunction should issue. There was never at any time by any person, until within the past 30 days, any objection to either the conditions or the amount of the bond. In due time the issues were made.

On February 26, 1906, the Attorney General and his associates filed a motion to refer the cases to a master. The next day the railway companies filed a motion to have the cases heard in open court. On March 5, 1906, Judge Philips, sitting alone, sustained the motion of the Attorney General and referred the cases to Hon. Frank L. Schofield, of Hannibal, as master to hear, until further orders, such cases as the parties at the beginning agree to be heard.

On October 7, 1907, Judge Philips ordered that the amendments pending the hearing of the original bills had the effect in law of uniting matters complained of in one bill, they therefore constituting but one bill of complaint, and all matters involved be fully heard and the master's findings should be embraced in a single report. From that point Judge Philips never took any other or further step in any of the cases. And from that point I, and I alone, made all orders down to and including final decrees. Thereupon the master took the evidence in the Burlington, Missouri, Pacific, and Wabash Cases and fixed June 18, 1907, for hearing.

On December 26, 1906, the Attorney General of Missouri filed with the Governor of the state a written report of and concerning these cases. The report is quite lengthy, contending that the rates fixed are reasonable, with the possible exception of the rate upon live stock. He also contended that owing to the opinion of Judge Philips, when a temporary writ was issued, it would be for the better to amend the statute with reference to the penalties. He also recommended that expert accountants, who had been working for the state, should give special attention to the reasonableness of the rates in each of the separate classifications of the statute of 1905, and state what would be a reason-

able rate upon these articles, in order that the Legislature might have the benefit of their investigation, to the end that the Legislature might bring about the enactment of a new maximum freight law for the purpose of making mutual concessions in order to avoid the delays incident to further litigation. The Governor on January 18, 1907, sent this report of the Attorney General to the Legislature for the information of that body in the further consideration of the question of freight rates.

The Legislature then passed a new maximum freight car load law, increasing in some respects the rates fixed by the act of 1905, lowering them in some instances, and creating additional penalties, and repealing all of the statute of 1905 excepting the penalties incurred thereunder. The Legislature of 1907 also enacted a 2-cent passenger rate statute. Each of these acts took effect June 14, 1907.

Thereupon, over the objection of the Attorney General, I allowed each of the railroad companies to file an amended and supplemental bill bringing these later statutes in question into the cases. I filed a written opinion therein allowing such supplemental bills to be filed, which opinions are to be found in (C. C.) 155 Fed. 220, and (C. C.) 161 Fed. 419, and as to such allowance of the supplemental bills my order was affirmed by the Supreme Court of the United States in Re Missouri Rate Cases, 230 U. S. 474, 496, 33 Sup. Ct. 975, 57 L. Ed. 1571.

On June 17, 1907, by consent of complainant, the injunction bond heretofore filed shall stand as applicable to this order the same as if it were executed and filed this day. By the same order the freight rates were enjoined, but an injunction as to the 2-cent passenger rates was denied. Leave was granted all parties, complainants and defendants, to ask for any further order. No other order was ever applied for.

On June 8, 1908, by written agreement of the parties, the orders of reference to Mr. Schofield, as master, were vacated, and the cases were set down for hearing in open court on October 5, 1908. On that date, by the agreement of parties, the hearing was postponed until November 9, 1908, at which time the hearing in open court was commenced and continued before the court until the cases were finally submitted on December 30, 1908, and by the court taken under advisement.

On June 13, 1907, I issued a restraining order as to the enforcement of both the freight and the passenger rate statute; but on June 17, 1907, I ordered the previous orders as to the passenger rates vacated and that the railroads put in the statutory rates for three months. There was no order at any time thereafter with reference to the passenger rate statute until the case went to final decree. But I did on June 17, 1907, by temporary injunction after argument by both sides, enjoin the maximum freight rate statutes of 1907. To be brief, on June 17, 1907, the freight rate statutes were enjoined and the statutory passenger rates of 2 cents were enforced until final decree in April, 1909.

On March 8, 1909, I filed an opinion reviewing all the 18 cases, with findings of fact, and ordering a perpetual injunction against the enforcement of both the freight rate and passenger rate statutes of 1907. See (C. C.) 168 Fed. 317–359. The decrees were prepared and entered

of record April 17, 1909. As to the defendant shippers and defendant passengers, the cases were dismissed without prejudice.

On July 28, 1909, the Attorney General and his associates took an appeal in the case No. 2998, wherein the Chicago, Burlington & Quincy Railroad Company was the complainant, and the railroad company took a cross-appeal September 22, 1909. Without explanation, no one of the other 17 cases was appealed by the state until March 22, 1911, immediately followed by cross-appeals by the remaining 17 railroad companies. The Burlington Case was argued and submitted to the Supreme Court of the United States on October 13, 1910. In the meantime the other 17 cases had been appealed, and the records shortly thereafter filed. Thereupon, on April 10, 1911, with all the 18 cases pending, the Supreme Court of the United States on its own motion vacated the order of submission in the Burlington Case, and restored the Burlington Case with the other 17 cases for reargument.

On April 1, 2, and 3, 1912, all of the 18 cases were argued, including the reargument of the Burlington Case, and on June 16, 1913, the Supreme Court filed its opinion reversing the 13 cases covered by groups one (1) and two (2) of this statement, and affirming the cases of groups three (3) and 4. See Missouri Rate Cases, 230 U. S. 474, 33 Sup. Ct. 975, 57 L. Ed. 1571.

It will therefore be seen that the complaint about the delay of these cases was occasioned by the delay of the then counsel for the state of Missouri in failing to appeal all of the 17 cases for two years from the time of the decrees of this court. The mandates were issued by the clerk of the Supreme Court of the United States on July 16, 1913, and filed with the clerk of this court on July 19, 1913.

The state allowed the cases to remain dormant until September 15, 1913, when a partial hearing was had on the mandates. The counsel for the state of Missouri then filed a motion for decrees following the mandates in the 13 cases covered by groups one (1) and two (2) hereof, moving the court for such decrees under the mandates, but with the clause added:

"* * * But saving to each shipper, consignee, and passenger, or other party in interest, who paid complainant rates in excess of the maximum rates fixed by the statutes complained of while the restraining order, the temporary injunction, or the injunction on final decree as granted in this case was in force, the right to sue complainant on their original cause of action for such overcharges."

On October 13, 1913, another hearing was had, the state withdrawing the motion last referred to, and moving the court that the decree recite only the dismissal of the cases covered by groups one (1) and two (2) without prejudice, at the cost of the railroad companies. That motion was argued orally, with leave granted to counsel to file briefs, the last of which on each side was filed within the last 10 days.

Although not of record, counsel have orally agreed before me that during the first week of July, 1913, the railroad companies complied with the findings and opinion of the Supreme Court and put into effect the passenger rates of 2 cents per mile. In some instances the railroad companies have complied with the freight rate statutes, and in some not; there being some controversy or dispute with reference

thereto. Such are the facts in these cases, some not material to the ruling now to be made. But they are the facts in the cases so easily ascertained from the records in the clerk's office that they should have been seen before counsel lately coming into the cases made their statements in a brief.

1. There never was a restraining order nor injunction as to the 2-cent passenger rate, other than for a few days, until final decree.

2. The injunctions as to both freight and passenger rates were tied up for two years longer than they would have been but for the delay in appealing the cases. The statute gave this long time for an appeal. Counsel for the state had a perfect right to have such delay. Then the Supreme Court held the cases for decision 15 months. But it is not for present counsel to charge such delays to this court. This court has never delayed the cases two months all told in the aggregate except by agreement of counsel.

3. A large part of the argument of the Attorney General is based on head lines in capital letters, repeated many times

"WE ARE INSISTING THAT THIS COURT HAS NOTHING TO DO
BUT FILE THIS MANDATE."

The records of the clerk's office of this court show that the clerk of the Supreme Court of the United States issued all of the 18 mandates on July 16, 1913, and they were received by the clerk of this court and "filed" by him three days thereafter, viz., July 19th, 1913. So that this was done five months ago, and that fact ends all discussion as to "filing" the mandates.

4. Much of the argument of the Attorney General is to the effect that excessive freight or passenger rates collected can be recovered back in an action at law before any court having common-law jurisdiction. He cites a very large number of authorities to sustain his contention, as to which this court has no doubt. But that question is not now, and quite likely never will be, in this or any other case. The question in these cases probably will be whether such additional rates charged by reason of the injunction can be collected by suit in any court, state or national, or, if collectible, must it be collected in this court in these cases? Views now expressed would be mere obiter dictum and not binding.

5. The mandate in each of the 13 cases recites:

"* * * This cause be and the same is hereby reversed. * * * It is further ordered that this cause be and the same is hereby remanded to the District Court of the United States for the Western District of Missouri, with directions to dismiss the bill without prejudice."

The Attorney General and counsel for the Public Service Commission on September 15, 1913, filed in this court in these cases a written motion for a decree of dismissal and for a recital in such decree:

"* * * That each shipper, consignee, and passenger who paid rates in excess of the statutory rates, while enjoined, shall have the right to sue on their original cause of action for such overcharges."

That form of the decree was contended for in oral argument. Thus these cases stood for a month, when that motion was withdrawn and

another motion by the Attorney General and counsel for the Public Service Commission was filed for a decree in the language of the mandate. This is of no importance other than to show a change of opinion by counsel as to what is and what is not the duty of this court.

Shall this court literally follow the mandate? Or can and shall this court add thereto? It is so well known as to be well-nigh a maxim of the law that, when an appellate court speaks, such holding is the law of the case in all subsequent proceedings of the case in both the trial and appellate courts. Occasionally an appellate court has declined to observe this rule when persuaded that the first opinion was wrong. But the rule is as first stated. And the rule is emphasized when the appellate court decides an equity case by reversal.

Nothing can be gained by collecting the cases in large numbers, as is easily done from digests and footnotes to text-books. There are two rules to be observed. The one is as is illustrated by the case of Gaines v. Rugg, 148 U. S. 229, 13 Sup. Ct. 611, 37 L. Ed. 432, from this circuit. In that case it was decided that the trial court should take the opinion of the Supreme Court, and with the mandate, construed together, enter a decree in conformity thereto. The last paragraph of the syllabi of the opinion reads:

"The construction of the intent and meaning of the opinion of this court was not a matter for the exercise of judicial discretion by the circuit court, and the case is a proper one for a mandamus by this court."

Many cases cite that holding with approval.

The other rule is as was announced by the Supreme Court in the two cases of In re Sanford Tool Co., 160 U. S. 247, 16 Sup. Ct. 291, 40 L. Ed. 414, and In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994. Such other rule is, after affirming the one first announced, that the trial court may consider and decide any matters left open by the mandate, or by acting on facts omitted warranting a new trial, and its decision of such matters can then be reviewed by a new appeal only. These two cases have been as frequently followed as the one in 148 U. S., and it would be an affected learning to cite them.

Of course other litigation may follow, but it is clear that nothing was left open by the opinion and mandates in these cases. The railways insist that the decrees now to be entered should have a reservation clause as to jurisdiction over the parties and the subject-matter. Such reservation clauses are often and wisely inserted. But both the opinion and the 13 mandates declare that the cases shall be dismissed without prejudice at the costs of the companies. How can a case be both dismissed and retained as a live case? If the usual reservation clause is to be inserted, why does not the opinion or mandate so recite? And, if wrong in its mandate, why has there not been a motion in that court to modify? And has this court the power?

It is said that there will be thousands of cases all over the state of Missouri before circuit courts and justices of the peace for recoveries of small sums from a penny to several dollars, with attendant costs more than the claims. If this be so, will there be no remedy? A discussion of that question, argued at great length, is not now here for decision.

The phrase "dismissed without prejudice" has been a fruitful theme for discussion. Is each case when so dismissed the same as though never brought? Where the rates were charged in excess of the statutory rates during the life of the injunction, can the same be recovered back? Were they unlawful when made lawful by the injunction? This question has been argued at much length. The Attorney General and his associates originally presenting this case, as well as on appeal, were men of high character and great learning, and they represented the shippers and passengers as much so as do the present attorneys. Such shippers and passengers then had their day in court, as they now have; neither more nor less. They either agreed to the injunction bonds, both as to conditions and penalties, or acquiesced therein. No complaint was made until a few weeks since. It is now claimed that the court should have exacted a larger penalty in the bond. In all cases, both in law and in equity, agreements of counsel are accepted by courts as both final and binding. Therefore it is that all contentions as to the bonds are to the one side of what this court can and should now do.

The decrees in each of the seven cases covered by group one (1) aforesaid will be as follows:

This case came on for hearing September 15, 1913, on the motion of the Attorney General of Missouri and his assistant, and counsel for the Public Service Commission of the state of Missouri, for a decree pursuant to the opinion of the Supreme Court of the United States filed June 16, 1913, and the mandate of said Supreme Court dated July 16, 1913, and filed with the clerk of this court July 19, 1913, which said opinion is reported in United States Reports, vol. 230, at page 474 and following,[1] by which said motion the said Attorney General and his said assistant and said counsel for said Public Service Commission moved the court for a decree of dismissal of this case without prejudice at the costs of said complainant, with a recital in the decree that each shipper, consignee, and passenger who paid rates in excess of the statutory rate, while enjoined, shall have the right to sue on their original cause of action for such overcharges. Said motion was then argued by counsel on both sides. October 15, 1913, the said Attorney General and his associates withdrew said motion and moved this court for a decree dismissing this case without prejudice at the costs of complainant without other recital. And now at this time the court sustains said motion.

It is therefore considered, ordered, adjudged, and decreed that the final decree of this court heretofore entered be and the same is vacated, and this case is dismissed without prejudice at the costs of the said complainant, which costs, including the costs of the Supreme Court, will be taxed by the clerk against the said complainant, and for which, if not paid within 41 days, a general writ of execution will issue therefor on the application of any party in interest. Any party feeling aggrieved at the said taxation of costs by the clerk of this court may within the said time, by written motion, filed herein, ask to have said costs retaxed.

The decree in each of said cases covered by group two (2) aforesaid will be as follows:

This case came on for hearing September 15, 1913, on the motion of the Attorney General of Missouri and his assistant, and counsel for the Public Service Commission of the state of Missouri, for a decree pursuant to the opinion of the Supreme Court of the United States filed June 16, 1913, and the mandate of said Supreme Court dated July 16, 1913, and filed with the clerk of this court on July 19, 1913, which said opinion is reported in the United States Reports, vol. 230, p. 474 and following,[1] by which said motion the said Attorney General and the said assistant, and said counsel for said Public Service Com-

[1] See 33 Sup. Ct. 976, 57 L. Ed. 1571.

mission, moved the court for a decree of dismissal of this case without prejudice at the costs of said complainant, with a recital in the decree that each shipper, consignee, and passenger who paid rates in excess of the statutory rates, while enjoined, shall have the right to sue on their original causes of action for such overcharges. Said motion was then argued by counsel on both sides. October 15, 1913, the said Attorney General and his associates withdrew said motion and moved this court for a decree dismissing this case without prejudice at the costs of complainant without other recital. And this court finds that the parties hereto have heretofore stipulated that this case appealed was to abide by the decision of said Supreme Court in said case No. 2988.

It is therefore considered, ordered, adjudged, and decreed that the final decree of this court heretofore entered be and the same is vacated, and this case is dismissed without prejudice at the costs of the said complainant, which costs, including the costs of the Supreme Court, will be taxed by the clerk, and for which, if not paid within 41 days, a general writ of execution will issue therefor upon the application of any party in interest. Any party feeling aggrieved at the said taxation of costs by the clerk of this court may within the said time, by written motion, filed herein, ask to have said costs retaxed.

The decree in each of said cases covered by group three (3) aforesaid will be as follows:

This case came on for hearing September 15, 1913, on the motion of said complainant for a decree pursuant to the opinion of the Supreme Court of the United States filed June 16, 1913, as reported in United States Reports, vol. 230, p. 474 and following,[1] and the mandate of the Supreme Court dated July 16, 1913, and filed with the clerk of this court July 19, 1913, to which reference is made.

It is therefore considered, ordered, adjudged, and decreed that the final decree heretofore and herein entered of record be and the same is hereby confirmed, each party paying one-half of the costs, including the costs of the Supreme Court, which will be taxed by the clerk, and for which, if not paid within 41 days, a general writ of execution will issue therefor upon the application of any party in interest. Any party feeling aggrieved at the said taxation of costs by the clerk of this court may within the said time, by written motion, filed herein, ask to have said costs retaxed.

The decree in each of said cases covered by group four (4) aforesaid shall be as follows:

This case came on for hearing September 15, 1913, for a decree herein pursuant to the opinion of the Supreme Court filed June 16, 1913, and reported in United States Reports, vol. 230, p. 474 and following,[1] and the mandate of the Supreme Court of date July 16, 1913, and filed with the clerk of this court July 19, 1913. And the court finds that the appeal in this case by stipulation of the parties hereto was to follow and abide by the decision of the Supreme Court in case No. 2994.

It is therefore considered, ordered, adjudged, and decreed that the final decree hereinbefore and herein entered of record be and the same is hereby confirmed, each party paying one-half of the costs, including the costs of the Supreme Court, which will be taxed by the clerk, and for which, if not paid within 41 days, a general writ of execution will issue therefor upon the application of any party in interest. Any party feeling aggrieved at the said taxation of costs by the clerk of this court may within the said time, by written motion, filed herein, ask to have said costs retaxed.

Such will be the decrees as of this date.

### Supplemental Opinion.

A few weeks since I filed an opinion in these cases resulting in the preparation of decrees dismissing the bill of complaint herein without

[1] See 33 Sup. Ct. 976, 57 L. Ed. 1571.

further order other than for costs. Within a few hours of the same day that the opinion was filed, one or more suits were brought by the state for very large sums of money to recover the excess rates charged by the railroads for the carrying of passengers and freight during the time the injunctions were in force. At a still later hour of the same day the railroad companies by counsel appeared and asked to have declarations of law and findings of fact made, equivalent to an application for rehearing. Since that time supplemental petitions have been filed by the railroad companies, and the cases have been resubmitted and are now for decision.

There were 18 of these cases brought by as many railroads asking that the state officers be enjoined from enforcing both the maximum freight rate statute and the 2-cent passenger statute. The cases were appealed to the Supreme Court of the United States, but only after a delay of two years by the state officers. All the 18 roads were required to put in force the 2-cent passenger statute, and that statute was observed until in April, 1909, when its enforcement was enjoined. Five of these cases were affirmed by the Supreme Court of the United States. There is no way of reimbursing the five roads that were thus compelled to carry passengers at 2 cents per mile for something over two years. There has been no remedy suggested, and that question seems to be at an end. The other 13 companies from the time of final decrees herein until the 1st of last July did charge in excess of 2 cents per mile per passenger, and did charge for intrastate freight more than the statute allowed. And the only question now presented is as to what shall be done by way of procedure for the recovery back of such excess passenger rates and freight rates during the time the state statutes were not observed. Only 2 cents per mile has been charged since July 1, 1913.

Ordinarily there is not the slightest doubt but that if a person, either for passenger or freight service, is charged by the company more than the legal or reasonable rate, such excess can be recovered back. This is so because such payment will be regarded as having been made under protest. Persons are not required to discuss such rates with ticket agents and subordinates, for the reason that such agents have no discretion, but must make the charge as commanded by their superior officers. And courts regard it as the duty on the part of the public to thus make such payment and then bring an action to recover back the excess, as at common law for money had and received.

[1] These cases are pending on mandates from the Supreme Court, and the question is: What shall the decrees be? The mandate recites:

"And it is further ordered that this cause be and the same is hereby remanded to the District Court of the United States for the Western District of Missouri, with directions to dismiss the bill without prejudice."

There is an additional formal printed part to be found in all mandates as follows:

"You therefore are hereby commanded that such execution and further proceedings be had in such cause in conformity with the opinion and decree of this court as according to right and justice and the laws of the United States ought to be had, the said appeals notwithstanding."

The opinion (230 U. S. 474, 33 Sup. Ct. 975, 57 L. Ed. 1571) concludes:

"The decrees * * * are reversed, and the cases remanded, with directions to dismiss the bills respectively, without prejudice."

The opinion and mandate must be construed together. What I stated in my opinion of December 20, 1913, I still adhere to:

"Shall this court literally follow the mandate? Or can and shall this court add thereto? It is so well known as to be well-nigh a maxim of the law that, when an appellate court speaks, such holding is the law of the case in all subsequent proceedings of the case in both the trial and appellate courts. Occasionally an appellate court has declined to observe this rule when persuaded that the first opinion was wrong. But the rule is as first stated. And the rule is emphasized when the appellate court decides an equity case by reversal. Nothing can be gained by collecting the cases in large numbers, as is easily done from digests and footnotes to text-books. There are two rules to be observed. The one is as is illustrated by the case of Gaines v. Rugg, 148 U. S. 229, 13 Sup. Ct. 611, 37 L. Ed. 432, from this circuit. In that case it was decided that the trial court should take the opinion of the Supreme Court, and with the mandate, construed together, enter a decree in conformity thereto. The last paragraph of the syllabi of the opinion reads: 'The construction of the intent and meaning of the opinion of this court was not a matter for the exercise of judicial discretion by the circuit court, and the case is a proper one for a mandamus by this court.' The other rule is as was announced by the Supreme Court in the two cases of In re Sanford Tool Co., 160 U. S. 247, 16 Sup. Ct. 291, 40 L. Ed. 414, and In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994. Such other rule is, after affirming the one first announced, that the trial court may consider and decide any matters left open by the mandate, or by acting on facts omitted warranting a new trial, and its decision of such matters can then be reviewed by a new appeal only. These two cases have been as frequently followed as the one in 148 U. S., and it would be an affected learning to cite them."

That such are the two general rules respecting the decrees of a trial court in an equity case reversed by an appellate court, with directions both in the opinion and a mandate to dismiss the bills of complaint, sometimes with and sometimes without prejudice, there can be no question, and counsel before me have not controverted such rules. Counsel for the state officers insist that it is a hard and fast rule and never subject to modification or control. It is without force to contend that the decree of a trial court reversed, with an opinion of the appellate court and its mandate on file, in all cases and under all circumstances must be in the language of the mandate.

There are two questions to be considered:

[2] One of these questions is: Did the Supreme Court of the United States in these cases leave any question open for the further consideration of this court? The question before this court was, first, as to the validity of the commodity freight statutes of 1905. That question soon went out of the case, because the Legislature of Missouri repealed the statute of 1905. Then the statutes of 1907 were enacted, some of them with reference to maximum freight rates, and one with regard to the 2-cent passenger fare. Over the protest of the then Attorney General and his associates, I allowed supplemental bills to be filed bringing the 1907 statutes before the court for consideration. On that question the decree of this court was affirmed by the Supreme Court.

Another question, being one of constitutional law, was: Did the Missouri statutes of themselves so impinge upon the commerce clause of the United States Constitution as to render the state statutes void? On that question the decree of this court was against that contention and was affirmed by the Supreme Court of the United States.

The other and remaining question was one of fact, and that was whether the rates thus prescribed by the Missouri statutes were sufficiently remunerative. This court held that they were not, and issued a perpetual injunction against the enforcement of the statutes. On that question of fact, the Supreme Court of the United States reversed the decrees of this court in 13 cases before this court, holding that the valuation of the roads was not definitely and with sufficient clearness established. On the other five cases there was an affirmance.

There was no other question either of fact or of law before either this court or the Supreme Court of the United States, and on that state of the record the 13 cases now before this court on mandate were reversed, with directions to dismiss the bill without prejudice, leaving it to the railroad companies, should they so elect, when the proofs would be attainable, to commence other cases of like nature, pressing the same on only one remaining point, namely, the question of fact above alluded to. So that on that question of fact nothing was left open by the Supreme Court of the United States, and for that reason the case of Gaines v. Rugg, 148 U. S. 229, 13 Sup. Ct. 611, 37 L. Ed. 432, above cited, and prior cases therein referred to, are controlling and conclude the controversy, unless it be because of other cases respecting another rule.

There have been many of these public utility rate cases before the courts, and in some of them there have been mere naked dismissals of the bills of complaint followed by a judgment for costs, but without other recitals in the decrees, nothing added and nothing subtracted. Such was done, as I understand it, in the Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511. In the Arkansas Rate Cases, 230 U. S. 553, 33 Sup. Ct. 1030, 57 L. Ed. 1625, which are very much like these 13 cases, the court retained jurisdiction to the exclusion of the state courts for the purpose of ascertaining to whom and in what sums moneys were due because of rates paid during the life of the injunction beyond those allowed by the statute. I have before me the opinion by Judge Trieber of the Eastern district of Arkansas, filed within the past ten days. Judge Trieber discusses many questions in that opinion, reaching conclusions in no wise controlling here. In the Arkansas Rate Cases bonds in penalties of $1,000,000 were conditioned as follows:

"If it should eventually be decided that so much of this order as inhibits enforcement of the rates prescribed * * * that the complainant shall refund to the owners and holders of the certificates issued by it (showing the excess payments) the excess charges as shown by the same."

Judge Trieber was expressly adjudicating the effect of the bonds before him. The rule is that the court can retain the bonds and have all liabilities thereunder adjudicated, or the court may remit the same to another court. In other words, those bonds in Judge Trieber's cases

were precisely one and the same as if a deposit of moneys had been required and placed in the registry of his court to reimburse all those who had paid fares beyond that which would have been reasonable or beyond rates fixed by statute. Such is Judge Trieber's opinion.

The Supreme Court of the United States but a few weeks since (City of Louisville v. Cumberland Telephone & Telegraph Co., 231 U. S. 652, 34 Sup. Ct. 260, 58 L. Ed. ——, January 5, 1914) was dealing with a case much like the Arkansas Rate Cases. An ordinance of the city of Louisville had been adopted fixing telephone rates. The trial court held that the rates thus fixed were confiscatory. On appeal the decree of the District Court was reversed. Louisville v. Telephone Co., 225 U. S. 430, 32 Sup. Ct. 741, 56 L. Ed. 1151. The opinion concludes by directing "Decree reversed without prejudice." The mandate required the District Court to proceed "for further proceeding not inconsistent with the opinion of this court." The trial court, after this mandate was filed, entered an order dismissing the case but retaining the same on the docket for the purpose of ascertaining the amounts collected by the company from its patrons in excess of the rates prescribed by the ordinance, and for the further purpose of distributing the same among the persons entitled thereto. During the progress of that case in the trial court, the city moved for an order requiring the company to pay into court all sums collected in excess of those rates fixed in the ordinance. To avoid that order and such deposit of money, the company agreed that, if the court would make no order, it (the company) would keep an accurate account of the sums collected on the rates fixed, and would on the final hearing pay the amounts into court for distribution among those entitled thereto, in the event the ordinance was not declared to be confiscatory. By reason thereof the court made no order requiring a deposit. In short, the proceedings of the trial court in the first instance was that the order for depositing the excess would not be made; the company agreeing to have the court ascertain the amount and then pay it into court for distribution. Such was part of the proceedings agreed to by both parties, and such was at the bottom of the opinion of the Supreme Court, as above cited. The trial court, after mandate was filed, proceeded to carry out this agreement, and an application for mandamus was made and denied by the Supreme Court of the United States but a few weeks since. The Supreme Court held that the trial court did not abuse its discretion on the whole record by having an accounting made in the court and requiring the amount found by the accounting to be paid into court and distributed.

Litigation like this arose in West Virginia. The proceedings there were in the state court. The court required coupons to be issued evidencing such excess fares thus paid. The Supreme Court of the state having held the act was constitutional, the case was affirmed by the Supreme Court of the United States in Chesapeake & O. R. Co. v. Conley, 230 U. S. 513, 33 Sup. Ct. 985, 57 L. Ed. 1597. After the mandate of the Supreme Court of the United States was filed with the Supreme Court of the state, and the Supreme Court of the state certified the proceedings to the trial court, then the trial court decided

that the moneys represented by these coupons should be gathered in by the court and distributed to the holders of such coupons.

Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060, is a case strongly urged in support of the contention that this court should appoint a master and assess the amounts of excess fares and distribute them. That case presented a controversy between the receivers of a railroad in the state of Minnesota and certain other parties claiming the right to rails, and perhaps other controversies. The entire contention was with reference to a trust, and as to what property the trust had been or should be impressed. But one party appealed from the decree, and he appealed only from that portion which declared that neither party is entitled to costs or damages. The case was first presented in the state court, and, had it remained there, a Minnesota statute would have been sufficient warrant to require the state to hold that the damages could be ascertained by reference or otherwise, as the court should direct. But, the case having been removed from the state court to the United States court, the Supreme Court held that statute was not applicable. The writer of the opinion, Mr. Justice Bradley, announces the rule to be that, where no bond or undertaking has been required, the court has no power to award damages sustained by either party in consequence of litigation, except by making such decree with reference to the costs as it may deem equitable and just. But that case is with reference to assessment of damages between parties to the record, and there was no other proposition before the court. I cannot reach the conclusion that that case is an authority upon the question now before this court. Commencing 24 years ago in the case of Milwaukee Railroad Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. Ed. 970, and continuing until the present time, there has been a uniform line of holdings that the fixing of rates is a legislative act, and in determining the question of whether rates thus fixed are remunerative or not is a judicial question. The further holdings are that the only appropriate way to determine such matters is to bring into the record such officers as have the enforcement of the legislative act as part of their duties.

In the case at bar the state officers, charged with the enforcement of the statute, were made parties defendant. For a time one individual shipper and an individual passenger were joined as defendants as supposed representatives of a class, but they were dismissed from the case, and, when these cases went to decree, the decree was only as between the railway company and the state officers. Shortly after the cases were commenced, this court, Judge Philips presiding, exacted and approved a bond of the railway company in the penal sum of $10,-000. After reciting the order the bond reads:

"Now, if said obligor pays, in case said injunction be dissolved, all damages ascertained herein to have been sustained by the defendants or any of them, or any person becoming a defendant herein, then this obligation to be void; otherwise in force and effect."

There was no other bond and no other requirement. And from the date of the filing of that bond, July 22, 1905, parties on both sides acquiesced therein, and by such acquiescence neither party can say

that the bond is to be construed otherwise than on its face, and courts both of law and of equity will consider the same in the language only in which it was given. The bond, it will be noticed, is to pay damages that the defendants or any of them, or any person becoming a defendant, may sustain. There is not a word in the bond with reference to shippers and passengers, and the terms of the bond will admit of no such construction. Therefore, for several years, with the consent of all parties to the record, the case proceeded as if there were no bond other than to reimburse the defendants to the record for such damages as they might sustain. There is nothing for shippers or passengers to adopt by pleading said bond, and there is nothing for the railway companies to assert against the passenger or shipper by reason of that bond. Neither party asked that the excess rates or fares be impounded or paid into the registry of the court or controlled in any way whatsoever. So that, in my opinion, there is nothing left for consideration except a mere money demand in the nature of an action for money had and received. And it can be fairly stated that in every case where the court, sometimes on the motion of the public and sometimes on the motion of the public utility, has compelled all parties to come into court upon a state of facts showing that there was some kind of a trust to be observed and enforced, or with the property in some way or other before the court for distribution. In some instances this trust has been in the nature of a bond taken by the court for the payment of such specific damages; sometimes by the agreement of the parties; sometimes with coupons taken; and sometimes with money in the registry of the court.

The Attorney General and his associates have commenced a case against every of the railroads, claiming the grand total of the excess fares and rates paid during the life of the injunction, on the ground, as I understand it, that the action can be brought by one person for all others of like interest. I do not discuss that question. The theory is, as I understand it, that officers not under bond can collect this grand total and make distribution thereof. But to whom the sums shall be distributed and in what manner the rightful parties ascertained is not made known. And that question I pass by. It is claimed, as I understand it, that, should there be any sum not claimed by any person, firm, or corporation, the same will "escheat," or be forfeited, to the state of Missouri. That question I pass by. As is known by all, a percentage of those paying excess fares and excess rates were and are nonresidents of the state. By what authority the Attorney General can thus act for such persons is not made known. But I pass that question by. It is said that this will result in years of litigation in the state courts before the rightful parties obtain the proceeds for such excess rates and fares. With that I have nothing to do.

The railway companies insist that, by the appointment of a master, these moneys and the rightful claimants could be ascertained and payments made within a few months. I believe that to be true. I believe it to be the simple, methodical, and economical way to proceed if the parties would but agree; but they do not agree. Ordinarily every claimant against another party for money had and received has the

right to proceed in the court of his own choice, provided, always, it is a court having jurisdiction of the subject-matter and of the parties. This is an absolute right, subject only to statutory rights for a change of the place of trial from one state court to another, and in some instances for a change from a state to a national court. But the claimant in the first instance has the right to select his forum.

In these cases some parties have already intervened; others making claim for reimbursement have asked the right to intervene. Some of them are residents and some nonresidents of the state of Missouri. The Attorney General and his associates object to such interventions. But it is the opinion of this court that such interventions are of no legal concern to either the state of Missouri or any officer thereof. I believe that such persons who elect to come into this court, with the consent of the railway companies, and have their cases promptly adjudicated, and with judgments thereon, if not promptly paid, should have the right to come into this court.

So that the decree in each of these 13 cases will be a dismissal of the bill of complaint without prejudice, with judgment for costs, and a vacation of all orders for injunctions, but with the right of any party seeking to proceed in this court will have the right to so do. And for that purpose a master will be appointed. But those claimants who do not thus elect to come into this court will not be bound so to do by any order of this court. They are left free to go to such courts as they may select.

The decrees will be accordingly.